946 A.2d 444

**Desmond Ellison DICKEY**

v.

**STATE of Maryland.**

**No. 23, Sept. Term, 2007.**

Court of Appeals of Maryland.

April 15, 2008.

Brian L. Zavin, Asst. Public Defender (Nancy S. Forster, Public Defender), on brief, for petitioner/cross-respondent.

Robert Taylor, Jr., Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen., M. Jennifer Landis, Asst. Atty. Gen.), on brief, for respondent/cross-petitioner.

Argued before BELL, C.J., RAKER, HARRELL, BATTAGLIA, JOHN C. ELDRIDGE (Retired, specially assigned), ALAN M. WILNER (Retired, specially assigned) and DALE R. CATHELL, (Retired, specially assigned), JJ.

RAKER, J.

This criminal case presents the question of whether the Circuit Court for Baltimore City erred in declining to give a jury instruction requested by the defendant as to the evaluation of the testimony of a witness who uses or is addicted to drugs. In particular, we consider whether the trial court erred in refusing to instruct the jury that the testimony of a particular witness "must be examined with greater scrutiny than the testimony of any other witness." We shall affirm the judgment of the Court of Special Appeals, but for different reasons.[1]

Petitioner, Desmond Ellison Dickey, was indicted by the grand jury for Baltimore City for the offenses of first degree murder, attempted first degree murder, conspiracy to commit murder, and related charges. The charges arose from a shooting in the area of Edmondson Avenue and Pulaski Street in Baltimore on August 12, 2001, that resulted in the death of Anthony Carlest and wounding of his cousin, Melvin McCallister.

The primary issue in the case was the identification of the shooter and the main defense was mis-identification. The State's case was based primarily on the testimony of McCallister and three bystanders who were present during the shooting. McCallister testified that he got into a fight with Juan Tucker, Dickey's cousin, shortly before the shooting. The

---

1. The Court of Special Appeals affirmed Dickey's convictions, but vacated his sentence on other grounds and remanded the case to the Circuit Court for further sentencing proceedings. The court held that the trial court erred in not giving the requested instruction, but that the error was harmless. Only the issue regarding the requested jury instruction is before this Court. We do not reach the question of whether the refusal to give the requested instruction was harmless error because the judge did not err in the first instance.

altercation ended when McCallister got into a car with his cousin Carlest, and Tucker ran in the other direction. McCallister testified that he and Carlest drove down Edmondson Avenue and were stopped at a red light when Juan Tucker pulled up on their right in a burgundy car with tinted windows. Tucker rolled down the window and said something to McCallister that McCallister did not hear. When the light changed, Tucker looked backwards as though he was talking to someone in the rear seat of his car. As Carlest drove about halfway through the intersection, McCallister heard around five gunshots and felt a bullet hit him in his back. After observing that Carlest had been shot, McCallister steered the car into the wall of a school building. He testified that he did not see the shooter because he had slid down in his seat; however, he picked Dickey out of a police line-up after the shooting. He stated, on the back of Dickey's photo, "[t]he person I picked out is Dezzy. He hangs with Juan."

Anna Boxer testified that while walking back from the store, she heard honking, turned around and saw a white Caravan stopped at a red light at Pulaski Street and Franklin Street. The driver got out and ran towards a "little maroon car," also stopped at the light, shooting "more than three" shots at the back of it. Ms. Boxer stated that the maroon car then "drifted across to a light pole" and hit another car. The driver of the white Caravan, meanwhile, gave his gun to a man she recognized from the convenience store, who was now sitting in "another maroon car" on the other side of the intersection. The two men switched cars and the shooter drove off in the maroon car. Ms. Boxer identified Dickey as the shooter and driver of the white Caravan.

William McLain testified that on the day of the shooting he was visiting his sister and nieces at their home on Pulaski Street. He opened the door to get some air at around 2:30 p.m. and heard gunshots. Mr. McLain stated that he saw a man shooting at a red car with three people in it. He testified at trial that he told the police that he saw the man coming back from a white van while putting a gun in his belt, and that the man spoke to him. His police statement indicated that he

saw a man coming back from a red car, putting a gun in his pants and getting into the van while the other car pulled away. McLain wrote down the license plate of the van and gave it to the police. The Motor Vehicle Administration listed Dickey as the owner of the van.

Earl Price, the witness whose testimony is the subject of this appeal, testified that he knew both Tucker and Dickey as long-time acquaintances. At around 2:30 p.m. on the day of the shooting, Price was walking on Edmondson Avenue and heard gunshots. He stated that he saw Dickey and Tucker behind a light colored car moving towards the intersection, and that Tucker was pointing towards the car while Dickey was kneeling or bending down. He said at first that he could not tell what was in their hands. After reviewing a transcript of his taped statement from October 2001, however, he testified that he saw Dickey kneeling with his arm extended, and that he had seen "something black" in Dickey's right hand and that he had written on the back of a photo of Dickey after picking him out in a photo array, "I saw him stooping down pointing in the area of the car with something black [in] this [right] hand . . . ." Price testified that he did not know if the object was a gun or whether Dickey was shooting at the car, but upon review of notes from a February 2004 interview with police, he later stated that he saw "Dezzy kneeling down and shooting at Franklin and Pulaski," that the shooting was over by the time Dickey lowered his arm, and that Dickey and Tucker then ran away from the car. Again after reviewing his statement, Price clarified that Dickey and Tucker got into a white car.

Price admitted that he testified at Juan Tucker's trial in 2003, and stated at that trial, under oath, that he lied to the police about being present during the shooting. At Dickey's trial, however, he stated that he lied at Tucker's trial because he was afraid "of what might happen" to him, and that his current version was the truth even though he was still afraid for his safety.

Price admitted that he was a heroin addict, an occasional cocaine user, and that he had a long history of drug use, starting from age fifteen or sixteen. Price testified that he was seeking help for his drug habit currently. Price admitted that he had used heroin on the day of the shooting but that it did not affect his ability to witness or recollect the events. He stated as follows:

"[DEFENSE COUNSEL]: And had you shot up that day or snorted heroin or something the day this incident happened?

"[PRICE]: Yes.

\*     \*     \*

"[DEFENSE COUNSEL]: You were pretty high at the time, right?

"[STATE]: Objection.

"[COURT]: Overruled. "[PRICE]: No.

"[DEFENSE COUNSEL]: You weren't high. You are used to it?

"[PRICE]: Yes."

On re-direct examination, Price stated that his drug use that day did not affect his ability to see the events that he described. He stated:

"[STATE]: Does [heroin] affect your ability to see what's going on?

"[PRICE]: I guess if you had enough of it, it would.

"[STATE]: Did it affect your ability that day to see Dezzy and Juan and the car?

"[PRICE]: No."

Price indicated also that he had been incarcerated for drug offenses in the past. He stated that he was currently on probation for a conviction of possession with intent to distribute a controlled dangerous substance. Finally, Price stated repeatedly on the record that he was testifying at Dickey's trial as part of a deal to avoid charges following an arrest for possession of controlled dangerous substances on October 4, 2001.

Dickey did not testify in his own behalf nor did he call any witnesses in his defense. At the close of evidence and prior to jury deliberation, petitioner's counsel requested the following jury instruction: [2]

"There has been evidence introduced at the trial that the government (or defendant) called as a witness a person who was using (or addicted to) drugs when the events he observed took place or who is now using drugs. I instruct you that there is nothing improper about calling such a witness to testify about events within his personal knowledge.

"On the other hand, *his testimony must be examined with greater scrutiny than the testimony of any other witness.* The testimony of a witness who was using drugs at the time of the events he is testifying about, or who is using drugs (or an addict) at the time of his testimony may be less believable because of the effect the drugs may have on his ability to perceive or relate the events in question.

"If you decide to accept his testimony, after considering it in light of all the evidence in this case, then you may give it whatever weight, if any, you find it deserves." (Emphasis added).

The Circuit Court refused to give the instruction primarily on the ground that the requested instruction would be fairly covered by other instructions to the jury concerning witness credibility and accuracy of a witness's memory. The court stated as follows:

"Mr. Price and none of the other witnesses are paid addict informers. Mr. Price was not an addict at the time of his testimony. There was full cross-examination as to his status on the day of the event and at the time of his testimony. This Court is giving other cautionary instructions as to credibility and including accuracy of memory and witness promised leniency so for those reasons, I believe the law is

---

**2.** The requested instruction was taken verbatim from 1 L. SAND ET AL., MODERN FEDERAL JURY INSTRUCTIONS ¶ 7–9.1 (2 006), entitled "Witness Using or Addicted to Drugs."

correctly stated and I'm not going to give the requested instruction."

The Circuit Court then instructed the jury in relevant part as follows: [3]

"You are the sole judges of whether a witness should be believed. In making this decision, you may apply your own common sense and everyday experiences. In determining whether a witness should be believed, you should care[fully] ... [j]udge all of the testimony and evidence and the circumstances under which the witness testified. You should consider such factors as the witness' behavior on the stand and manner of testifying.

"Did the witness appear to be telling the truth?

"The witness' opportunities to see or hear the things about which testimony was given.

"The accuracy of the witness' memory.

"Does the witness have a motive not to tell the truth?

"Does the witness have an interest in the outcome of the case?

"Was the witness' testimony consistent?

"Was the witness' testimony supported or contradicted by evidence that you believe?

"And whether, and the extent to which the witness' testimony in the Court differed from the statement made by the witness on any previous occasion.

"You need not believe any witness even if the testimony is uncontradicted. You may believe all, part or none of the testimony of any witness.

"You may consider the testimony of a witness who testifies for the State as a result of a promise that he will not be prosecuted. However, you should consider such testimony

---

3. The court's instructions were from the Maryland Criminal Pattern Jury Instructions 3:10 (Credibility, of Witnesses), 3:13 (Witness Promised Benefit), 3:22B (Impeachment by Prior Conviction), 3:16 (Number of Witnesses), and 3:30 (Identification of Defendant). MARYLAND CRIMINAL PATTERN JURY INSTRUCTIONS (MICPEL 2007) ("MPJI–CR").

with caution because the testimony may have been colored by a desire to gain leniency by testifying against the Defendant.

"You have heard evidence that Earl Price has been convicted of a crime[.] [Y]ou may consider this evidence in deciding whether the witness is telling the truth but for no other purpose.

"The weight of the evidence does not depend upon the number of witnesses on either side. You may find that the evidence of a smaller number of witnesses on one side is more believable than a greater number of witnesses on the other side.

"The burden is on the State to prove beyond a reasonable doubt that the offense was committed and that the Defendant was the person who committed it. You have heard evidence regarding the identification of the Defendant as the person who committed the crimes. In this connection you should consider the witness' opportunity to observe the criminal act and the person committing it including the length of time the witness had to observe the person committing the crime, the witness' state of mind and any other circumstance surrounding the event.

"You should also consider the witness' certainty, the accuracy of any prior description and the witness' credibility or lack of credibility as well as any other factor surrounding the identification."

Petitioner was convicted of first degree murder, attempted first degree murder, conspiracy to commit murder, and use of a handgun in the commission of a felony or a crime of violence. He was sentenced to life imprisonment plus thirty years.

Petitioner noted a timely appeal to the Court of Special Appeals. In an unreported opinion, the court affirmed the judgments of conviction, holding, in relevant part, that the court's refusal to grant the instruction was error, but that the error was harmless. The court relied on *Allen v. State*, 91 Md.App. 705, 605 A.2d 960 (1992), *cert. denied*, 327 Md. 625, 612 A.2d 256 (1992). In *Allen*, the Court of Special Appeals

held that the trial court erred in failing to give a specialized drug addict instruction on credibility where the evidence of drug usage "was abundant" and "[t]he trial court's general instructions did not specifically address [the witness's] relationship with drugs and the concomitant effect on his credibility as a witness." *Id.* at 742, 605 A.2d at 978. Nonetheless, the panel found the error to be harmless because the general instructions fairly covered the issue of credibility of witnesses, there was "independent evidence" of the defendant's guilt, and the "jury was well aware" of the witness's drug use. *Id.* at 744–45, 605 A.2d at 979.

In the instant case, the Court of Special Appeals found that, given Price's admission of drug use and treatment for addiction at the time of trial, Dickey was entitled, apparently as a matter of law, to more than a general instruction on witness credibility. Nonetheless, because of the jury's awareness of Price's drug use, through direct and cross-examination, and the independent evidence of Dickey's guilt, namely Boxer's identification and the van registration linking him as the owner of a vehicle connected with the scene of the crime, the error was harmless. We granted certiorari to consider the following reordered and rephrased questions:

(1) Whether the trial court erred in refusing to give the requested instruction on the credibility of drug user or addict testimony; and

(2) If the trial court erred, was the error harmless beyond a reasonable doubt?

*Dickey v. State,* 399 Md. 592, 925 A.2d 632 (2007). Because we find no error, we do not reach the second question.

Petitioner argues that the Court of Special Appeals was correct in finding that the trial court erred when it failed to give the requested instruction. Petitioner relies on *Allen v. State,* 91 Md.App. 705, 605 A.2d 960, and contends that the instruction represented a correct statement of the law, was applicable under the facts of the case, and was not fairly covered by the instructions given. He cites a number of cases from other jurisdictions where courts accepted the idea that

drug use may affect an individual's ability to perceive or relate an event.[4]  Finally, petitioner maintains that defense counsel's ability to attack Earl Price's credibility on cross-examination and in closing arguments does not substitute for a jury instruction by the court.

The State argues that the trial court did not err in refusing to give the jury instruction requested by defense counsel. The State asserts that, under Rule 4–325(c), the instruction was not required because it was not a correct statement of the law, it was inapplicable to the facts of the case, and the subject was fairly covered in the instructions to the jury.  Further, the State argues that refusal to give a drug user or addict instruction has not been deemed error in the majority of the federal courts of appeal.  *See infra* n. 9.

The main purpose of jury instructions "is to aid the jury in clearly understanding the case, to provide guidance for the jury's deliberations, and to help the jury arrive at a correct verdict.  Jury instructions direct the jury's attention to the legal principles that apply to the facts of the case." *General v. State*, 367 Md. 475, 485, 789 A.2d 102, 108 (2002) (citation omitted).

Maryland Rule 4–325 governs jury instructions in criminal cases.  The Rule states, in pertinent part, as follows:
"The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding.  The court may give its instructions orally or, with the consent of the parties, in writing instead of orally.  The court need not grant a requested instruction if the matter is fairly covered by instructions actually given."
Rule 4–325(c) has been interpreted consistently as requiring the giving of a requested instruction when the following three-part test has been met:  (1) the instruction is a correct

---

4.  We note that simply because use of drugs may affect a person's perception, it does not mean that a court's refusal to instruct on this principle is error *per se.*

statement of law; (2) the instruction is applicable to the facts of the case; and (3) the content of the instruction was not fairly covered elsewhere in instructions actually given. *Thompson v. State*, 393 Md. 291, 302–03, 901 A.2d 208, 214 (2006); *Patterson v. State*, 356 Md. 677, 683–84, 741 A.2d 1119, 1122 (1999). We have said that whether the instruction is a correct statement of law "is independent of the facts of the case in which it is given, which results in it being determinative of whether the instruction . . . is *per se* improper." *Thompson*, 393 Md. at 303, 901 A.2d at 214. Thus, a trial judge is required to give a requested instruction that states applicable law correctly[5] and has not been fairly covered by other instructions. *Patterson*, 356 Md. at 683–84, 741 A.2d at 1122; *Gunning v. State*, 347 Md. 332, 347, 701 A.2d 374, 382 (1997).

Rule 4–325(c) "is not 'absolute.'" *Gunning*, 347 Md. at 347, 701 A.2d at 381. In *Gunning*, we considered whether a court's refusal to give a requested identification instruction, MPJI–CR 3:30, was error. Noting that courts in other jurisdictions were split as to whether an eyewitness identification instruction should be mandatory, we adopted the approach that left the decision "within the sound discretion of the trial court." *Id.* at 345, 701 A.2d at 380. We stated as follows:

> "We do not find instructions on such [eyewitness identification] issues to be always mandatory, but neither do we consider them never necessary nor *per se* improper. . . . We instead recognize that an identification instruction may be appropriate and necessary in certain instances, but the matter is addressed to the sound discretion of the trial judge."

*Id.* at 348, 701 A.2d at 382 (finding that a failure to exercise judicial discretion, however, is error). If a judge determines that the evidence presented creates a need for a jury instruc-

---

5. We have noted that where a requested instruction is technically erroneous, but the subject is one in which the court is required to give an instruction, it is the duty of the trial court to include a correct instruction. *Noel v. State*, 202 Md. 247, 252, 96 A.2d 7, 10 (1953); *Gooch v. State*, 34 Md.App. 331, 337, 367 A.2d 90, 94 (1976).

tion on eyewitness identification, then the court should consider whether the instruction is a correct statement of law, and whether the subject matter contained in the requested instruction was fairly covered in other instructions to be given. *Id.*

In *Gunning*, this Court reiterated the principle that "Maryland law ... is clear that a requested instruction need not be given where other instructions 'fairly cover' the subject matter of the requested instruction." *Id. See also England v. State,* 274 Md. 264, 274–76, 334 A.2d 98, 105 (1975) (finding a refusal to give the requested instruction was not error because the requested instruction on eyewitness identification was fairly covered by instructions on the burden of proof and weighing of evidence). We reasoned that "[i]n many cases, detailed instructions on such issues as witness credibility and/or the burden of proof may adequately encompass the subject matter of a requested identification instruction." *Gunning,* 347 Md. at 350, 701 A.2d at 383. While recognizing the usefulness of specific identification instructions in *Gunning,* this Court left the determination as to whether to give a requested instruction on the topic within the court's discretion.

■ We turn now to the question of whether the trial court erred in its refusal to give the requested instruction on drug user or drug addict credibility. Applying the three-part test from Rule 4–325, we find that the trial court did not err in refusing to give the requested instruction. The instruction was not a correct statement of law and other instructions fairly covered the subject matter of the requested instruction.[6]

The requested instruction states in relevant part as follows:

---

6.  We note that the evidence at petitioner's trial made an instruction on drug user or drug addict witness applicable to the facts of the case. Price's testimony dealt at length with his drug use, both historically and specifically on the day of the shooting itself. Price amended his testimony several times upon review of his prior statements, and the details of his testimony differed in some respects from the testimony of Ms. Boxer and other witnesses. In addition, Price testified that he lied during his previous equivocation of his identification at Tucker's trial, and that he was a drug addict currently seeking help for his addiction. While his eyewitness testimony was not uncorroborated nor was his

"There has been evidence introduced at the trial that the government (or defendant) called as a witness a person who was using (or addicted to) drugs when the events he observed took place or who is now using drugs.... *his testimony must be examined with greater scrutiny than the testimony of any other witness.* The testimony of a witness who was using drugs at the time of the events he is testifying about, or who is using drugs (or an addict) at the time of his testimony *may be less believable because of the effect the drugs may have on his ability to perceive or relate the events in question.*" (Emphasis added).

■ The instruction calls for an examination of the testimony of a drug user or addict "with greater scrutiny than the testimony of any other witness." There is no rational reason for the testimony of a drug user or addict to be examined with more caution than any other witness. Typical pattern jury instructions regarding the testimony of an accomplice witness or a witness promised a benefit by the State, addressing concerns that the witness may have motivations to lie, state that the testimony be considered merely "with caution." *See* MPJICR 3:11, 3:13; *Brown v. State*, 281 Md. 241, 243–45, 378 A.2d 1104, 1106–07 (1977) (tracing the history in Maryland that accomplice testimony should be "received with caution and weighed and scrutinized with great care...."); *Archer v. State*, 383 Md. 329, 371 n. 4, 859 A.2d 210, 235 n. 4 (2004) (quoting *Luery v. State*, 116 Md. 284, 292, 81 A. 681, 684 (1911)) (noting with approval the court's instructions to the jury that the corroborated testimony of an accomplice and the testimony of a witness promised benefit should be viewed "with caution"). *See also* MISSISSIPPI MODEL JURY INSTRUCTIONS–CRIMINAL § 1:14 (2d ed.2003) (instructing that the jury weigh the testimony of an alleged accomplice or informant "with great care and caution"); ILLINOIS PATTERN JURY INSTRUCTIONS–CRIMINAL § 3.17 (4th ed.2006) (advising the jury

---

testimony the only criminal agency evidence against Dickey, the issue of Price's drug use was relevant throughout his testimony and therefore an instruction on the issue could have been applicable.

to consider the testimony of an accomplice "with caution"); PENNSYLVANIA BAR INSTITUTE, PENNSYLVANIA SUGGESTED STANDARD CRIMINAL JURY INSTRUCTIONS § 4.01, 4.06, 4.07(B) (2d ed.2005) (instructing the jury that accomplice testimony should be viewed "with care and caution," testimony under special circumstances, such as a previously hypnotized witness, informer, or admitted perjurer be received "with caution," and that identification testimony where accuracy is in doubt must be received "with caution").

In the case *sub judice*, the requested jury instruction does not deal with a motivation to lie, but with the effect of drugs on the "ability to perceive or relate the events in question." Many other witnesses may have difficulty perceiving significant events for any number of reasons. The instruction requested in this case asked the court to instruct the jury that a drug user or drug addict witness's testimony was *more suspect* than *any* other factor. This is simply not the case. We find no sound basis to justify subjecting the testimony of a drug user or addict to *greater* scrutiny than that of other witnesses who may have motives to lie, or who have other severe perception limitations. Based on the heightened standard of scrutiny called for in the instruction, the requested instruction was not a correct statement of the law. *See, e.g., Ware v. State*, 348 Md. 19, 58, 702 A.2d 699, 718 (1997) (finding that an instruction incorrectly advising the jury that unanimity is not required in order for a jury to impose a life sentence was not a correct statement of law). The trial court was, at the very least, under no obligation to give the instruction as submitted by defense counsel, and indeed, there is a strong argument that to have given the requested instruction to the jury as written would have itself been error.

We hold also that the instructions the trial court gave in this case served to instruct the jury sufficiently on the applicable law. In *Gunning*, we said that a request for an eyewitness identification instruction should be carefully considered by the court, but we did not require one in all circumstances. We stated one important exception, noting as follows:

"[A] request for an eyewitness identification instruction may be rejected when . . . other instructions contain criteria or guidance that is similar to the requested instruction. Such determinations lie within the sound discretion of the trial court."

*Gunning,* 347 Md. at 354–55, 701 A.2d at 385 (footnote omitted). Although we held in *Gunning* that the judge abused his discretion by not exercising any discretion,[7] the reasoning set forth from that case made it clear that even the basic instruction on eyewitness identification, MPJI–CR 3:30, was not mandatory but a matter within the court's discretion.

The subject of the ability of a drug user or drug addict witness to perceive and relate events is fairly covered by MPJI–CR 3:10 on the credibility of witnesses, and 3:30, on the identification of the defendant. Instruction 3:10 states as follows:

"You are the sole judge of whether a witness should be believed. In making this decision, you may apply your own common sense and every day experiences.

"In determining whether a witness should be believed, you should carefully judge all the testimony and evidence and the circumstances under which the witness testified. You should consider such factors as:

"(1) the witness's behavior on the stand and manner of testifying;

"(2) did the witness appear to be telling the truth?

"(3) the witness's opportunity to see or hear the things about which testimony was given;

"(4) the accuracy of the witness's memory;

"(5) does the witness have a motive not to tell the truth?

"(6) does the witness have an interest in the outcome of the case?

---

7. *Beverly v. State,* 349 Md. 106, 137, 707 A.2d 91, 101 (1998) (quoting *Maus v. State,* 311 Md. 85, 108, 532 A.2d 1066, 1077 (1987)) ("When a court must exercise discretion, failure to do so is error, and ordinarily requires reversal.").

"(7) was the witness's testimony consistent?

"(8) was the witness's testimony supported or contradicted by evidence that you believe? and

"(9) whether and the extent to which the witness's testimony in the court differed from the statements made by the witness on any previous occasion.

"You need not believe any witness, even if the testimony is uncontradicted. You may believe all, part or none of the testimony of any witness."

MPJI–CR 3:30 states as follows:

"The burden is on the State to prove beyond a reasonable doubt that the offense was committed and that the defendant was the person who committed it. You have heard evidence regarding the identification of the defendant as the person who committed the crime. In this connection, you should consider the witness's opportunity to observe the criminal act and the person committing it, including the length of time the witness had to observe the person committing the crime, the witness's state of mind, and any other circumstance surrounding the event. You should also consider the witness's certainty or lack of certainty, the accuracy of any prior description, and the witness's credibility or lack of credibility, as well as any other factor surrounding the identification."

Counsel was free to argue in closing the impact or effect drug use or addiction might have had on the witness's ability to perceive, observe or recall events.

The court instructions to consider the witness's opportunity to see or hear the events about which he or she is testifying, the witness's accuracy of memory and state of mind, or any other circumstances surrounding the event, coupled with Price's testimony as to his drug use and the ability of defense counsel to attack his credibility in closing argument, provided ample guidance for the jury to make credibility assessments. The trial court stated that "this Court is giving other cautionary instructions as to credibility and including accuracy of memory and witness promised leniency so for those reasons, I

believe the law is correctly stated and I'm not going to give the requested instruction." Even assuming that the requested instruction was a correct statement of law, the trial judge exercised his discretion properly and was correct that the other instructions fairly covered the subject matter of the requested instruction.[8]

Many courts have considered the question of jury instructions related to witnesses using or addicted to drugs. The issue arises in several contexts. One is simply the witness addict or user, and another is the addict-informant. Unfortunately, sometimes the analysis conflates the addict-informant instruction with the more general user/addict instruction. The addict-informant instruction is based on the concern that "addict-informants are subject to powerful temptations that create a serious risk that they will lie on the stand." *United States v. Rodgers,* 755 F.2d 533, 549 (7th Cir.), *cert. denied,* 473 U.S. 907, 105 S.Ct. 3532, 87 L.Ed.2d 656 (1985). Although the majority of federal courts have not found error in refusing to give an addict-informant instruction,[9] such an addict-informant instruction differs from a "Witness Using or Addicted to

---

**8.** To the extent our decision in the case *sub judice* conflicts with the Court of Special Appeals' decision in *Allen v. State,* 91 Md.App. 705, 605 A.2d 960, we disapprove of *Allen.*

**9.** *See, e.g., United States v. Williams,* 809 F.2d 75, 87 (1st Cir.1986), *cert. denied,* 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 377 (1987); *United States v. Bryan,* 122 F.3d 90, 92 (2d Cir.1997); *Government of Virgin Islands v. Hendricks,* 476 F.2d 776, 779 (3d Cir.1973); *United States v. Gregorio,* 497 F.2d 1253, 1261–63 (4th Cir.1974), *overruled on other grounds by United States v. Rhodes,* 32 F.3d 867 (4th Cir.1994); *Scott v. Mitchell,* 209 F.3d 854, 882–83 (6th Cir.2000); *United States v. Yarbough,* 55 F.3d 280, 283–85 (7th Cir.1995); *United States v. Hoppe,* 645 F.2d 630, 632–33 (8th Cir.), *cert. denied,* 454 U.S. 849, 102 S.Ct. 170, 70 L.Ed.2d 138 (1981); *United States v. Vgeri,* 51 F.3d 876, 881 (9th Cir.1995); *United States v. Smith,* 692 F.2d 658, 660–61 (10th Cir. 1982), *cert. denied,* 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983); *United States v. Solomon,* 856 F.2d 1572, 1577–79 (11th Cir. 1988), *cert. denied,* 489 U.S. 1070, 109 S.Ct. 1352, 103 L.Ed.2d 820 (1989). *But see United States v. Kinnard,* 465 F.2d 566, 572 (D.C.Cir. 1972) (finding reversible error where the conviction rested upon the uncorroborated testimony of an addict-informer, no instruction given on the reliability of addict-informers, and cross-examination concerning the witness's addiction was restricted).

Drugs" instruction. The purpose of the "Witness Using or Addicted to Drugs" instruction is to direct the jury's attention to the potential *perceptual* effects drug use or addiction might have on a witness's ability to observe and relate events in the witness's testimony, not the motivation to lie. The commentary to the "Witness Using or Addicted to Drugs" instruction in L. Sand's Modern Federal Jury Instructions recognizes that most courts addressing an addict-witness emphasize the informant and motive to lie aspect when evaluating whether the instruction is necessary, stating as follows:

> "No circuit ... has held that the failure to give such a cautionary charge necessarily will be plain error without further analysis.... The Sixth and District of Columbia Circuits have gone the farthest ... by holding that absent corroboration or other cautionary instructions which cure the defect, failure to highlight the credibility issue upon request will be error; *however, these holdings involved cases where the witness was both an addict and an informer* .... In subsequent decisions not involving an informer, the Sixth Circuit has made it clear that there is no per se rule requiring the instruction."

1 L. Sand et al., Modern Federal Jury Instructions ¶ 7–9.1 (2006) (footnotes omitted) (emphasis added).

In the jury instruction context, several cases from other jurisdictions address the perceptual effects of drug use on a witness, rather than the addict-informant motivation to lie. These cases reach a conclusion similar to our holding. In *State v. Ortega*, 112 N.M. 554, 817 P.2d 1196 (1991), the defendant appealed his conviction for murder and related charges. One basis for his appeal was the court's refusal to instruct the jury with the witness using or addicted to drugs instruction. The New Mexico Supreme Court held that the refusal to give the requested instruction was not error because the "subject matter was already covered by the uniform jury instruction on evaluating the credibility of witnesses, UJI Crim. 14–5020, which was given." *Id.* at 1217. New Mexico's Uniform Criminal Jury Instruction 14–5020 read as follows:

"You alone are the judges of the credibility of the witnesses and the weight to be given to the testimony of each of them. In determining the credit to be given any witness, you should take into account the witness's truthfulness or untruthfulness, ability and opportunity to observe, memory, manner while testifying, any interest, bias or prejudice the witness may have and the reasonableness of the witness's testimony, considered in the light of all the evidence in the case."

N.M. Stat. Ann. UJI–CR § 14–5020 (LexisNexis 2008).

Our view comports with the view of the Court of Appeals for the Seventh Circuit. In *United States v. Rodgers*, 755 F.2d 533, 549 (7th Cir.), *cert. denied*, 473 U.S. 907, 105 S.Ct. 3532, 87 L.Ed.2d 656 (1985), the Seventh Circuit found no error in the court's refusal to give a jury instruction on the effect of drug use on perception. The defendant requested the following sentence be added to the jury instruction on witness credibility: "In judging the credibility of a witness you may also take into account the effect, if any of drug usage upon the witnesses' ability accurately to perceive, remember, and recall." *Id.* Two witnesses in the case had testified that they had used cocaine during the events about which they testified. The Seventh Circuit stated as follows:

"Rodgers cannot rely on [analysis regarding addict-informant instructions] because, as the First Circuit recently stated in rejecting a similar contention, the instruction requested by the defendant reflected a concern with the witness's ability to perceive and relate the truth, not with a deliberate misstatement because of the desire to please the government."

*Id.* (citations omitted). The *Rodgers* court went on to say that "any reliability problems with [the witnesses'] testimony were sufficiently highlighted for the jury through the testimony and the instructions actually given at trial." *Id.*

Similarly, though less explicitly, the Court of Appeals for the Eighth Circuit has rejected a claim that the refusal to give a specific instruction on drug use's effect on perceptive ability

is error. In *United States v. Grey Bear*, 883 F.2d 1382, 1386–88 (8th Cir.1989), the defense counsel offered a specific instruction to address the condition of each witness, where one witness had consumed fifteen cans of beer and smoked two or three joints of marijuana on the day of the killing. Although the requested instruction did not address drug use specifically, it dealt in detail with the witness's ability to perceive the events in question. The court stated as follows:

"[The general credibility instruction] adequately pointed out the relevant considerations to be weighed in gauging eyewitness testimony. The jury was instructed to consider each witness's intelligence, motive, memory, and state of mind, along with the conditions prevailing at the time of observation. With regard to the drunkenness of some witnesses, the district court appropriately instructed the jury to consider each witness's ability to observe matters testified to, as well as his opportunity to observe the persons in question. We are satisfied that [the general instruction] afforded defense counsel ample latitude to argue that the observational capacity of certain witnesses was impaired by their drunken state. The instruction given properly guided the jury's deliberation, and it was not error to refuse the tendered instruction."

*Id.* at 1388 (footnotes omitted).

In sum, we hold that the trial court did not err in refusing to instruct the jury as requested by defense counsel. The requested instruction was not a correct statement of law and was fairly covered by other instructions regarding witness credibility and identification. The denial to give such an instruction is not error. On the other hand, had counsel submitted a properly worded instruction advising the jury that if the jury found that Price was addicted to drugs and had been using drugs during the relevant time in question, the jury should consider Price's testimony with care and caution, it would have been within the court's discretion to give the instruction and would not have been error.

208

*JUDGMENT OF THE COURT OF SPECIAL APPEALS*
*AFFIRMED.  COSTS TO BE PAID BY PETITIONER.*