81 A.3d 427

Hubert Allen WOOD

v.

STATE of Maryland.

No. 28, Sept. Term, 2013.

Court of Appeals of Maryland.

Dec. 19, 2013.

Jeffrey M. Ross, Assistant Public Defender (Paul B. DeWolfe, Public Defender of Maryland, Baltimore, MD), on brief, for Petitioner.

Jessica V. Carter, Asst. Atty. Gen. (Douglas F. Gansler, Attorney General of Maryland, Baltimore, MD), on brief, for Respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD, and ALAN M. WILNER (Retired, Specially Assigned), JJ.

GREENE, J.

In the present case, we are asked to decide whether the Court of Special Appeals erred when it affirmed the trial court's conviction of Hubert Allen Wood ("Petitioner" or "Wood"). Petitioner presents two issues on appeal. First, Petitioner asks whether the trial court complied with Md.Code (2001, 2008 Repl. Vol.), § 3–104(a) of the Criminal Procedure Article (hereinafter § 3–104(a)) when it allowed Petitioner to withdraw his request for a competency evaluation and after-

wards did not make a competency determination on the record. We conclude that Petitioner's withdrawal of his request for a competency evaluation, in conjunction with the minimal evidence on the record to support a finding of incompetency, supported the Circuit Court for Cecil County's acknowledgment that the issue of competency was moot and, therefore, the presumption of Petitioner's competency was not rebutted. Petitioner attempts to have it both ways, first refusing a competency evaluation because he believed he was competent to stand trial and then, upon a finding of guilt, reversing his position and maintaining that the trial judge should have made a competency determination on the record. Second, Petitioner asks whether his request for a jury instruction on the defense of provocation was properly denied. We conclude that the evidence presented did not generate such a defense, and the denial was proper. Accordingly, we affirm the judgment of the Court of Special Appeals.

## FACTS AND PROCEDURAL HISTORY

On September 22, 2010, Petitioner was indicted in the stabbing death of Daniel Curran ("Curran" or "victim"). At a pretrial hearing on January 21, 2011, Petitioner's counsel indicated that he was considering whether to file a request for a psychological evaluation following a conversation with Petitioner's mother and requested to reschedule the pretrial hearing so he could explore the option "more in depth." The hearing was rescheduled for the following week and, at that time, Petitioner's counsel submitted a request for an evaluation of competence, which the court subsequently granted. The Court ordered the Department of Health and Mental Hygiene ("DHMH") to conduct an in-custody competency evaluation and for DHMH to submit a copy of the report to counsel and the court.

At a later motions hearing on May 10, 2011, the parties and the trial judge discussed the request for a competency evaluation. Defense counsel explained that he "had some questions about [Petitioner's] competency based on a history of prior admissions to psychiatric facilities and also after talking with

his mother and her familiarity with her son." He further explained, however, that the doctor at DHMH went to see Petitioner to complete the evaluation, and Petitioner refused to speak with him because the evaluation would "cast[ ] doubts about [his] sanity." Defense counsel then emphasized that he "still ha[s] those concerns [about Petitioner's competency], and . . . even his current course of action in not talking to the doctor exacerbates those concerns, doesn't allay them." When the State commented that Petitioner's failure to submit to a competency evaluation might be grounds for appeal once he is convicted, the trial judge responded that "the only thing I can say is we ordered the examination, made it available to him." The prosecutor then made clear that "if there is something presented during this motions hearing [or if there is any indication that's observable] that the defendant is not of sound mind, I'm going to be making a request for an emergency evaluation."

On May 26, 2011 at another pretrial hearing, the following colloquy ensued:

[Petitioner's counsel]: Your Honor, we are here for an issue of competency to stand trial. And after further discussions with Mr. Wood, both substantively and about this particular issue, I have come to the conclusion that I should withdraw my request. And that is with Mr. Wood's concurrence. Is that correct, Mr. Wood?

[Wood]: Yes, sir.

[Trial Judge]: Okay. And you understand the consequences of withdrawing that motion?

[Wood]: Yes.

[Petitioner's counsel]: And the consequences are there will be no such evaluation?

[Wood]: Yes.

[Petitioner's counsel]: All right.

[Trial Judge]: Because it's my understanding [DHMH] attempted to perform an evaluation and they wrote back that at that time you refused to participate, so that's why we

were going to send you for further evaluation at Clifton T. Perkins. But you are withdrawing the motion?

[Wood]: Yes, Your Honor.

[Trial Judge]: And that's all moot.

Petitioner's trial lasted from June 13 to June 16, 2011. The following evidence, relevant to this appeal, was presented at the trial. The victim's body was discovered by Mr. Michael Martin, a friend who occasionally "check[ed] in on" the victim, on February 17, 2010. Mr. Martin testified that the home was "trashed," and the dresser drawer where Curran stored his medication was overturned. Martin drove to the local grocery store and notified police. The owner of the local grocery store, Mrs. Wright, who had frequent contact with the victim, testified that when Curran "was sober, he was awesome. If he wasn't sober, we didn't let him into the store." Mrs. Wright further testified that on February 12, 2010, Petitioner came to the grocery store with a note signed by Curran authorizing the purchase of beer, which was a regular practice between Wright and Curran.

Another witness for the State, Matthew Morris, testified that at one time prior to Curran's death, Petitioner talked to Morris about "robbing the guy up the street" to "steal his pills," and that the "guy up the street" could only mean Curran. A friend of Petitioner's, Michael McDonald, testified that during a visit to the area in March 2010, he visited Petitioner, and that Petitioner told him that he and the victim had been drinking when they got into an argument over pills, during which Petitioner "snapped" and stabbed Curran "in the temple and in the neck[.]" Petitioner's mother also testified for the State. She admitted that on February 12, 2010, a "drunk" and "lethargic" Petitioner came home and told her he "hurt" Curran. When the prosecutor refreshed her recollection, Petitioner's mother acknowledged that during her interview with police on September 9, 2010, she twice told the detectives that Petitioner told her that he thought he killed Curran. She insisted at trial, however, that Petitioner only

said he "hurt" Curran, and that he did so because Curran "had said something inappropriate about [her]."

It was determined that at the time of his death, the victim was in poor physical health; he was dying of cancer and had been "beaten very badly" by someone a few days prior to his murder. While he was being treated for this earlier beating, the victim told medical personnel that he had a "history of aggressive behavior" and had threatened others "physically or verbally" when "drunk or high." He also stated that he would "like to kill the person who beat [him] up[.]" A toxicology report showed that the victim tested positive for ethanol and other substances at the time of his death.

The jury returned a verdict of guilty as to the first-degree murder charge and Petitioner was sentenced to life imprisonment with all but 80 years suspended. Petitioner noted a timely appeal to the Court of Special Appeals, which affirmed the judgment of the Circuit Court in a reported opinion. *Wood v. State,* 209 Md.App. 246, 58 A.3d 556 (2012). We granted *certiorari* on April 22, 2013, *Wood v. State,* 431 Md. 219, 64 A.3d 496 (2013), to answer the following questions: [1]

---

1. We modify the questions presented for brevity and clarity. The original Petition for Writ of Certiorari presented the following questions:

(1) Where Petitioner's counsel filed a written suggestion of incompetency to stand trial and requested a competency evaluation but subsequently withdrew the request for competency evaluation, with Petitioner's "concurrence," was the trial court required to determine, on evidence presented on the record, whether Petitioner was competent to stand trial pursuant to Md.Code (2008 Repl. Vol.), § 3–104(a) of the Criminal Procedure Article and/or as a matter of due process?
(2) If the answer to the first question is affirmative, was the trial court required to explicitly state on the record its determination regarding Petitioner's competency to stand trial or does an implicit determination suffice for purposes of compliance with Md.Code, Crim. Proc. Art. § 3–104(a) (2008 Repl. Vol.) and/or the requirements of due process?
(3) Assuming *arguendo* that an implicit determination suffices, did the Court of Special Appeals err in holding that the trial court "implicitly determined" that Petitioner was competent to stand trial?
(4) Where there was some evidence that the victim had a history of being physically and verbally aggressive when "drunk or high," that the victim was "drunk or high" when he was allegedly killed by

(1) Did the Court of Special Appeals err when it held that the trial court complied with Md.Code (2001, 2008 Repl. Vol.), § 3–104(a) of the Criminal Procedure Article when the trial judge allowed Petitioner to withdraw his request for a competency evaluation, and afterwards did not make a competency determination on the record?

(2) Did the Court of Special Appeals err when it determined that the Circuit Court properly denied Wood's request for an instruction on legally adequate provocation because that defense was not generated by the evidence?

## I.

The present case does not involve a substantive challenge to Petitioner's competency to stand trial. Rather, Petitioner claims that the trial court committed a procedural error by failing to make a competency determination following defense counsel's request for, and subsequent withdrawal of, a competency evaluation. With that in mind, we turn to the requirements of Maryland law.

Preliminarily, we note that a person accused of committing a crime is presumed competent to stand trial. *Peaks v. State*, 419 Md. 239, 251, 18 A.3d 917, 924 (2011); *Ware v. State*, 360 Md. 650, 703, 759 A.2d 764, 792 (2000). "It has long been accepted[, however,] that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975). The relevant standard was codified in § 3–104(a), which states:

If, before or during a trial, the defendant in a criminal case or a violation of probation proceeding appears to the court to be incompetent to stand trial or the defendant alleges

Petitioner, that the victim and Petitioner got into an argument when he was killed, and that Petitioner "snapped" and then allegedly killed the victim, did the Court of Special Appeals err in holding that an instruction on legally adequate provocation was not generated?

incompetence to stand trial, the court shall determine, on evidence presented on the record, whether the defendant is incompetent to stand trial.

Md.Code (2001, 2008 Repl. Vol.), § 3–101(f) of the Criminal Procedure Article defines "incompetent to stand trial" as someone who is unable "(1) to understand the nature or object of the proceeding; or (2) to assist in one's defense." *See also Peaks*, 419 Md. at 251, 18 A.3d at 924. This Court has explained that the General Assembly enacted these statutes in order to "mandate the precise actions to be taken by a trial court when an accused's competency to stand trial was questioned." *Roberts v. State*, 361 Md. 346, 363, 761 A.2d 885, 894 (2000) (citing *Sangster v. State*, 312 Md. 560, 541 A.2d 637 (1988)).

The interpretation and application of § 3–104(a) has been visited by this Court many times since the statute's enactment.[2] *See, e.g., Peaks*, 419 Md. 239, 18 A.3d 917; *Gregg v. State*, 377 Md. 515, 833 A.2d 1040 (2003); *Roberts*, 361 Md. 346, 761 A.2d 885; *Sangster*, 312 Md. 560, 541 A.2d 637. We have explained:

The language of [§ 3–104](a) mandates actions to be undertaken by a trial court, if an accused's competency is properly called into question. These actions can be broken down into three distinct and simple steps: (1) First, a determination of competency may be made at any time before or during a trial; (2) Second, such a determination must be made if the defendant in a criminal case appears to be incompetent to stand trial or the defendant alleges incompetence to stand trial; and (3) Finally, the court must make its determination on the evidence presented on the record.

*Roberts*, 361 Md. at 364, 761 A.2d at 895. The first step is self-explanatory and merely "specifies the time frame within which the question of the accused's competency must be

---

**2.** This statute was formerly Md.Code (1982, 1987 Cum. Supp.), § 12–103 of the Health-General Article, and some of these cases interpret that prior codification. No substantive changes were made when the statute was recodified as § 3–104(a).

made." *Id.* Petitioner has clearly satisfied this step because his counsel filed the request for a competency evaluation prior to trial.

■ The second step requires the issue of competency to be properly before the court. "As the statute makes plain, a trial court's duty to determine the competency of the accused is triggered in one of three ways: (1) upon motion of the accused; (2) upon motion of the defense counsel; or (3) upon a *sua sponte* determination by the court that the defendant may not be competent to stand trial." *Thanos v. State,* 330 Md. 77, 85, 622 A.2d 727, 730 (1993) *(Thanos I).* Because the issue of Petitioner's competency was raised by motion, it was properly before the trial court and the second step under § 3–104(a) was likewise satisfied.

■ The crux of this appeal is whether the third step of § 3–104(a) was satisfied, or if it even needed to be satisfied in this situation. This Court has undertaken the task of interpreting this requirement, that "the court must make its determination on the evidence presented on the record," at length. Such a determination by a trial judge should not "be made lightly but upon testimony and evidence on the record." *Treece v. State,* 313 Md. 665, 682, 547 A.2d 1054, 1063 (1988). We have held that "[w]e view the Legislature's inclusion of such language ['on evidence presented on the record,'] as a clear indication that it intended the determination of competency to be essential in preserving an accused's due process rights and that such rights could only be preserved if the determination was made on evidence presented on the record." *Roberts,* 361 Md. at 366, 761 A.2d at 896. The determination of a person's competency to stand trial is held to a standard of beyond a reasonable doubt. *Id.*

■ The issue presented on appeal involves a two-step inquiry: (1) whether Petitioner was legally permitted to withdraw the request for a competency evaluation; and (2) if so, whether Petitioner's withdrawal renders the competency issue moot. The first issue can be disposed of quickly. In short, the answer is yes, Petitioner may legally withdraw a request

for a competency evaluation. As the Court of Special Appeals correctly pointed out, there is nothing in Maryland case law, rules, or statutes that prohibits the withdrawal of a request for a competency evaluation. *Wood,* 209 Md.App. at 296, 58 A.3d at 585. Section 3–105 of the Maryland Criminal Procedure Article also sheds light on this issue. That section provides the guidelines for the performance of competency evaluations conducted by the Health Department [3] with respect to criminal cases. In pertinent part, it provides that "[t]he court shall set and may change the conditions under which the examination is to be made." Md.Code (2001, 2008 Repl. Vol.), § 3–105(a)(2) of the Criminal Procedure Article. Because this section allows the court to change the conditions of a competency evaluation, it follows that the court is free to accept the withdrawal of a request for such an evaluation. Additionally, we note that a trial court in another case has allowed the withdrawal of a request for a competency hearing and this Court did not question that decision. *See Peaks,* 419 Md. at 247, 18 A.3d at 922 (citing the transcript of the lower court stating that the defense withdrew the right to contest the competency issue).

██ The second inquiry, whether Petitioner's withdrawal renders the issue of competency moot, is not so quickly answered. We shall hold that the issue of competency is moot so long as the trial judge did not have a bona fide doubt that Petitioner was competent based on evidence presented on the record. More specifically, we hold that, under the circumstances of this case, the Circuit Court's determination that the issue of competency was moot was in compliance with § 3–104(a), and that there was no bona fide doubt created by evidence on the record that Petitioner was competent.

██ In the present case, the record demonstrates that Petitioner was afforded an opportunity to be heard, and there was sufficient evidence on the record for the trial court to

---

**3.** Section 3–101 of the Maryland Criminal Procedure Article defines "Health Department" as "the Department of Health and Mental Hygiene."

discern Petitioner's competence. In *Roberts,* we held that under this third requirement, while a defendant need not be afforded a formal hearing, "an accused must be afforded an opportunity to present evidence upon which a valid determination can be made." 361 Md. at 356, 761 A.2d at 891. "A judge with no jury present is not required to use any magic words to designate as a separate hearing the presentation to him of testimony and evidence for his determination of the competency of the accused to stand trial." *Peaks,* 419 Md. at 252, 18 A.3d at 925. This opportunity was indeed afforded to Petitioner in the present case. The trial judge, upon defense counsel's motion, granted Wood's request for a competency evaluation and scheduled a hearing on the matter. As the trial judge explained, the court did all it could do in the present situation by "ma[king the evaluation] available to [Petitioner]." It was Petitioner's explicit choice not to participate in the competency evaluation. Moreover, the trial judge scheduled a pretrial hearing on Petitioner's competency, thereby acting to ensure Petitioner had an opportunity to be heard.

Additionally, the issue of Petitioner's competency was discussed at multiple pretrial hearings, which developed an adequate record on the issue. Although the legal analysis in the *Roberts* case informs this Court's judgment, the divergent facts shed light on why the cases' outcomes are different. In *Roberts,* the trial court denied the defendant's request for a competency evaluation without a hearing on the matter and therefore never gave the accused an opportunity to be heard in order to develop evidence, on the record, of his competency. 361 Md. at 354–56, 761 A.2d at 890. Here, the trial court immediately granted the request and held several pretrial hearings in which Petitioner's competency was discussed. The trial judge in this case afforded Petitioner every opportunity to participate in an evaluation and to present additional evidence at one of the pretrial hearings. The State added, on the record, that, apart from any renewed request from Petitioner, it would raise the issue of competency if Petitioner acted abnormally at any of the later proceedings. At no time during

the proceedings did the State ask for a further evaluation of Petitioner's competency.

Moreover, it is a reasonable inference that the trial judge gave credence to the fact that Petitioner's counsel ultimately withdrew his request for a competency evaluation. The United States Supreme Court has stated that defense counsel is often the person with the "best-informed view" of his client's ability to participate in his own defense. *Medina v. California,* 505 U.S. 437, 450, 112 S.Ct. 2572, 2580, 120 L.Ed.2d 353, 366 (1992); *see also Thanos v. State,* 330 Md. 576, 586, 625 A.2d 932, 936 (1993) *(Thanos II)* ("A lawyer who has been acquainted with a client for months will be much more familiar with the client's mental state than a judge who has just met the defendant at trial."). Because "judges must depend to some extent on counsel to bring issues into focus[,]" *Drope,* 420 U.S. at 176–77, 95 S.Ct. at 906, 43 L.Ed.2d at 116, it is reasonable to conclude that the trial judge credited defense counsel's judgment to revoke his request for a competency evaluation as evidence in favor of a continued presumption of Petitioner's competence. For the foregoing reasons, we hold that the trial judge complied with § 3–104(a). The withdrawal of Petitioner's request for an evaluation, under the circumstances, rendered the issue of competency moot and did not affect the presumption that Petitioner was competent to stand trial.

■ Second, there is no evidence that the trial judge had a bona fide doubt as to the question of Petitioner's competency. We hold that because there was compliance with § 3–104(a), the issue of competency was moot unless the trial judge or another party later had a basis to question Petitioner's competence to stand trial. The Supreme Court of the United States has held, and Maryland has adopted the rule, that where the evidence raises a "bona fide doubt" as to a defendant's competence to stand trial, the trial judge must *sua sponte* raise the issue and make a competency determination based on evidence presented on the record. *Gregg,* 377 Md. at 528, 833 A.2d at 1048 (citing *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15

L.Ed.2d 815 (1966)); *see also Wolcott v. United States*, 407 F.2d 1149, 1151 (10th Cir.1969) ("It is there said that if any information coming to the attention of the court raises a 'bona fide doubt' of the defendant's competency to waive his constitutional rights and plead or to stand trial, it then becomes the inescapable duty of the court to conduct a due process hearing to determine mental competency and to make appropriate findings thereon."). To be sure, a trial judge is "presumed to know the law and to apply it properly." *State v. Chaney*, 375 Md. 168, 179, 825 A.2d 452, 458 (2003). This presumption extends to the need for a competency determination in the instant case. In essence, even though the issue of competency was rendered moot by Petitioner's withdrawal of his request, the trial judge still had a duty to *sua sponte* evaluate Petitioner's competency if there was a bona fide doubt created by evidence on the record.[4] Evidence relevant in determining whether there exists a bona fide doubt as to an accused's competence, includes "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial[.]" *Gregg*, 377 Md. at 528, 833 A.2d at 1048 (quoting *Drope*, 420 U.S. at 180, 95 S.Ct. at 908, 43 L.Ed.2d at 118).

In the present case, the trial judge, presumably, was aware of his duty to raise the issue of Petitioner's competence *sua sponte* if evidence created a bona fide doubt. At oral argu-

---

4. The intermediate appellate court explained the difference between criminal responsibility and competency, and the important role of the judge in the latter determination: "[I]t is important to keep in the front of the mind that competence to stand trial (or to waive counsel) is a very different thing than criminal responsibility. It is far more a matter of raw intelligence than it is of balanced psychiatric judgment or legal sanity or of mental health generally. Because of the very nature of the subject, it is one in which a defendant's conversation with a judge may be far more revealing than a defendant's conversation with a psychiatrist or psychologist. The judge both speaks the language and understands the language of courtroom behavior and courtroom problems, which may sometimes be largely a foreign tongue to the most educated of psychiatrists. The two disciplines are very different, and the professor who is, in effect, marking the defendant's paper needs to be a master of the appropriate discipline." *Muhammad v. State*, 177 Md. App. 188, 259, 934 A.2d 1059, 1100–01 (2007).

ment, Petitioner's counsel asserted that the following evidence speaking to Petitioner's competence was present on the record: that Petitioner's counsel alleged his incompetence, Petitioner's history of psychiatric admissions, and his refusal to cooperate in the competency evaluation because "people should not doubt his sanity." We do not believe that this information, without more, is sufficient to create a bona fide doubt in a trial judge's mind that Petitioner was competent to stand trial. We therefore affirm the judgment of the intermediate appellate court that the Circuit Court was not required to make a determination of competency in the present case,[5] and further that the trial judge did not err in finding the issue moot.

## II.

We next visit the issue of whether the Court of Special Appeals correctly determined that the Circuit Court properly denied Petitioner's request for a jury instruction on the defense of provocation. Because the evidence presented was not sufficient to establish adequate provocation to mitigate murder to manslaughter, we affirm the intermediate appellate court's judgment that the jury instruction request was properly denied.

We review the decision for an abuse of discretion when considering a trial judge's denial of a proposed jury instruction. *Sidbury v. State*, 414 Md. 180, 186, 994 A.2d 948,

---

5. While we affirm the judgment of the Court of Special Appeals, we do not submit to its reasoning. That court held that the trial judge implicitly determined that Petitioner was competent by accepting his withdrawal of the issue of competency, but we emphasize that the trial judge was not required to make that determination absent a bona fide doubt as to Petitioner's competency to stand trial. Notwithstanding the fact that there is no constitutional requirement that a defendant's competency be explicitly determined on the record, we submit that it may be practicable for the trial judge to have a brief colloquy with the defendant to eliminate any ambiguities in the competency determination. We request the Rules Committee to consider this matter and determine whether providing a brief list of questions for a trial judge to pose to a defendant whose competency has been questioned would prove useful and would close the door on this issue.

951 (2010). When deciding when a particular jury instruction is appropriate, a trial judge exercises discretion by assessing the evidence on the record and deciding whether it supports a particular legal principle or theory of a party. "Therefore, the onus is on the trial judge to discern and ensure that the jury instructions encompass the substantive law applicable to the case. While we defer to the trial judge's ruling, an improper exercise of discretion may cause prejudice to a party and result in reversible error." *Collins v. National R.R. Passenger Corp.*, 417 Md. 217, 228–29, 9 A.3d 56, 63 (2010).

Maryland Rule 4–325 codifies the requirements for instructions to the jury. Section (c) explains how they are given: "The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding. The court may give its instructions orally or, with the consent of the parties, in writing instead of orally. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given." Md. Rule 4–325(c). This Court has interpreted Rule 4–325 as containing three components that must be met in order to include a proposed jury instruction in the ultimate charge to the jury: "(1) the instruction is a correct statement of law; (2) the instruction is applicable to the facts of the case; and (3) the content of the instruction was not fairly covered elsewhere in instructions actually given." *Dickey v. State*, 404 Md. 187, 197–98, 946 A.2d 444, 450 (2008). The issue here involves the second component.

When a defendant requests a particular jury instruction, this Court has held that a party need only produce "some evidence" to support such an instruction. *Bazzle v. State*, 426 Md. 541, 551, 45 A.3d 166, 171 (2012). *"Some evidence* is not strictured by the test of a specific standard. It calls for no more than what it says—'some,' as that word is understood in common, everyday usage. It need not rise to the level of 'beyond reasonable doubt' or 'clear and convincing' or 'preponderance.'" *Dykes v. State*, 319 Md. 206, 216–17, 571 A.2d 1251, 1257 (1990) (emphasis in original).

 The next relevant inquiry is the proper standard for determining when the defense of provocation applies. This Court has delineated a four-part test: "(1) There must have been adequate provocation; (2) The killing must have been in the heat of passion; (3) It must have been a sudden heat of passion—that is, the killing must have followed the provocation before there had been a reasonable opportunity for the passion to cool; (4) There must have been a causal connection between the provocation, the passion, and the fatal act." *State v. Rich,* 415 Md. 567, 582, 3 A.3d 1210, 1219 (2010) (quoting *Girouard v. State,* 321 Md. 532, 539, 583 A.2d 718, 721 (1991)). A situation involving "mutual combat" is one instance in which this defense may be raised.[6] We have explained this principle in the past:

> The rule of provocation will apply when persons enter into angry and unlawful combat with a mutual intent to fight and, as a result of the effect of the combat, the passion of one of the participants is suddenly elevated to the point where he resorts to the use of deadly force to kill the other solely because of an impulsive response to the passion and without time to consider the consequences of his actions.... Insulting words or gestures, no matter how opprobrious, do not amount to an affray, and standing alone, do not constitute adequate provocation.

*Sims v. State,* 319 Md. 540, 552, 573 A.2d 1317, 1322–23 (1990).

 Although words alone can not amount to provocation, there is an exception to this general principle. Adequate provocation can be elicited from words "if they are accompanied by conduct indicating a present intention and ability on the part of the victim to cause the [defendant] bodily harm." *Carter v. State,* 66 Md.App. 567, 572 n. 3, 505 A.2d 545, 548 n.

---

6. This Court has recognized certain situations in which this defense may be raised: "mutual affray, assault and battery, discovering one's spouse in the act of sexual intercourse with another, resisting an illegal arrest, witnessing, or being aware of, an act causing injury to a relative or third party, and anything the natural tendency of which is to produce passion in ordinary men and women." *Christian v. State,* 405 Md. 306, 323, 951 A.2d 832, 842 (2008).

3 (1986). This is the language Petitioner relies upon to assert that "some evidence" existed to support a jury instruction on provocation. Respondent contends, however, that there is a complete lack of evidence to establish either a mutual affray or words and conduct sufficient to establish the defense. We agree with Respondent.

In his brief to this Court, Petitioner asserts that the following evidence supported such a jury instruction. Following a prior assault that did not involve Petitioner, the victim told medical personnel that he had a "history of aggressive behavior" and had threatened others "physically or verbally" when "high or drunk." A local grocer testified that the victim was not allowed in the store if he was intoxicated. A toxicology report showed that the victim tested positive for ethanol and other drugs. A friend testified that Petitioner told him that Petitioner and the victim had been drinking when they got into an argument over pills, during which Petitioner "snapped" and stabbed the victim. Petitioner allegedly told his mother that during his encounter with the victim, the victim made a derogatory comment about Petitioner's mother.

None of this amounts to "some evidence" supporting a defense of provocation. Very little is known about the events that transpired immediately preceding the death of the victim. Without evidence presented to develop what occurred between the victim and Petitioner, it is impossible for a jury to find that Petitioner was adequately provoked to kill the victim. There were only two witnesses to the altercation and the events leading up to it; one witness is deceased as a result of the attack, and the other witness is the Petitioner himself, who did not testify. What is known is that the victim was in poor physical health after having been "very badly beaten," and was presumably incapable of participating in a physical affray with Petitioner. Apparently, there was an argument between the two over pills and a derogatory comment was made by the victim about Petitioner's mother, but there is no evidence that either occurrence involved any physical act until the stabbing itself. Indeed, "[i]nsulting words or gestures, no matter how opprobrious, do not amount to an affray, and standing alone,

do not constitute adequate provocation." *Sims,* 319 Md. at 552, 573 A.2d at 1322–23. Even if the words were not isolated and there was a "present intention and ability on the part of the victim to cause [Petitioner] bodily harm," there is no evidence on the record to support that notion. Additionally, as the intermediate appellate court pointed out, demonstrating that the victim had a history of becoming physical or abusive when drunk is not evidence that such conduct occurred in this particular instance. Quite simply, there is no evidence that Petitioner was adequately provoked by a sudden heat of passion that caused the death of the victim. For the foregoing reasons, we affirm the judgment of the intermediate appellate court.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

HARRELL, J., dissents.

HARRELL, J., dissenting.

I dissent, with respect and some reluctance. In the ordinary case, when a litigant withdraws a motion generally, before it is acted upon finally, the objective of the motion is mooted and any appellate review and disposition is easy-peasey. In our body of capital punishment jurisprudence, it is said sometimes that "death is ... different" (*see, e.g., Redman v. State,* 363 Md. 298, 315, 768 A.2d 656, 665 (2001)), as a means to explain why the Court treats analytically an argument or situation differently than were it to arise in other legal contexts. I have come to believe that the same sentiment should apply to mental competency questions in our criminal justice scheme.

In the present case, the trial judge was persuaded initially by the defense that the presumption of Wood's competency had been overcome necessarily when the judge ordered an in-custody competency evaluation of Wood by DHMH. Maj. op. at 281–82, 81 A.3d at 430. The predicate for that action

tendered by the defense to overcome the presumption was thin by any account, i.e., unparticularized prior admissions to psychiatric facilities and talking to Wood's mother about her son. *Id.* Learning thereafter, however, that Wood refused to cooperate in being evaluated by DHMH did not dissuade immediately defense counsel or the trial judge that the question of Wood's competency was behind them. *Id.*[1] Thus, as of the commencement of the hearing on 26 May 2011, during which the trial judge declared the matter moot based on nothing more than the naked request of defense counsel (and Wood) to withdraw the request for evaluation, there had been no: (1) further discussions with Wood's mother (which earlier conversations had formed some part of the basis for overcoming the presumption of competency); (2) consideration of at least trying to produce and examine (whether by the trial judge, DHMH, or someone at Clifton T. Perkins Hospital) any records of the prior admissions of Wood to psychiatric facilities; or (3) persevering to have Wood seen by the doctors at Clifton T. Perkins (which the judge indicated he intended to do, at the State's urging for an "emergency evaluation"). *Id.* at 281–83, 81 A.3d at 430–31. I think that the Majority opinion lets the trial judge off too easily from the path that had been trodden partially in this case, in the context of mental competency considerations in criminal justice matters. Release from those duties imposed on the Bench by our prior cases (discussed in the Majority opinion) should not be granted merely because defense counsel succumbed to the perhaps misguided wishes of his client (a client of whom he had reason apparently to doubt his competency). Moreover, this state of affairs does not restore the presumption of competency on this record. Someone must be accountable to command potential available

---

1. Even an "armchair psychiatrist," and in the absence of a readily available copy of the DSM–5 (Diagnostic and Statistical Manual of Mental Disorders), should appreciate that an individual's protestations of competency and declination to be examined further on that score are not necessarily reliable indicators that he or she does not have a "problem" in fact.

and relevant information to be adduced because the matter did not become moot merely because effectively Wood declared himself competent.

I am troubled particularly with the Majority opinion's justification for excusing the judge from inquiring further (even in the face of the withdrawal of the motion) because there was no evidence before him from which he could have harbored a bona fide doubt as to Wood's competency. Maj. op. at 290–92, 81 A.3d at 435–36. The same "evidence" that persuaded the judge to order an evaluation in the first place (which necessarily meant the presumption of competency had been overcome in the judge's view) persisted. As noted, there seemed potentially fruitful areas of inquiry for other information (cataloged above) that went unexplored by the judge. Moreover, the judge did not articulate that or why he did not harbor a bona fide doubt. Rather, he moved on to a trial on the merits merely because defense counsel buckled in the face of his client's perhaps misguided wishes.[2] Competency to aid in the defense of one's own criminal trial is too important to be tossed aside so lightly based on formulaic procedural grounds.

I would reverse the judgment of the Court of Special Appeals and order remand to the Circuit Court for further proceedings. I do agree, however, with the Majority opinion's analysis and holding on the jury instruction question. Maj. op. at 292–96, 81 A.3d at 436–39.

---

2. One can only wonder how much aid in his defense Wood was, given the prompt convictions.