28 A.3d 129

**Michael DONALDSON, Jr.**

v.

**STATE of Maryland.**

**No. 2799, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Sept. 6, 2011.

Claudia A. Cortese (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for Appellant.

Carrie J. Williams (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: GRAEFF, WATTS, and PAUL E. ALPERT, (Retired, specially assigned), JJ.

ALPERT, J.

Michael Donaldson, Jr., appellant, was convicted in the Circuit Court for Baltimore County of first degree murder, conspiracy to commit first degree murder, and the use of a handgun in a crime of violence. The court imposed a sentence of life in prison, without the possibility of parole, on the murder charge, a consecutive life sentence on the conspiracy charge, and a consecutive 20 year sentence on the handgun charge, all to be served consecutively to any outstanding and unserved Maryland sentences. This timely appeal followed.

Appellant presents only one question for our review:

Did the trial court err in allowing the video tapes of the police interviews of Michael Donaldson to be played for the jury?

We answer appellant's question in the negative, and we thus affirm the judgments of the circuit court.

## FACTS [1] and LEGAL PROCEEDINGS

The testimony adduced at trial showed that on March 22, 2009, appellant planned and participated in the execution style murder of his close friend, James Falcoun, allegedly because he discovered that Falcoun had had a sexual relationship with Joanne Severn, appellant's girlfriend and the mother of two of his children. Appellant recruited two other friends, Eric Moss and Edward Harris, to carry out the murder, telling them he

---

1. Appellant does not challenge the sufficiency of the evidence. Therefore, we recite the facts of the matter only briefly, solely to provide the backdrop to the issue appellant raises.

wanted "his best home boy dead" for something he did with Joanne Severn.[2]

Appellant lured Falcoun to a dark side street near appellant's home on the pretense of wanting Falcoun to download some of his music to appellant's cell phone. When Falcoun arrived with his girlfriend, Erica Burke, appellant got into Falcoun's car. Shortly thereafter, a man, later identified as Edward Harris, appeared at the driver's window. Appearing to recognize the man, Falcoun rolled down the window as if to shake his hand. Instead, Harris pointed a gun at Falcoun and fired approximately six times. Eric Moss stood by the rear driver's side door but did not participate in the shooting.

Falcoun was able to drive away from the scene of the shooting, but when he hit another car while attempting to reach safety, appellant fled the vehicle, leaving his cell phone behind. Burke used appellant's cell phone to call 911. She then got into the driver's seat and pulled the car into a nearby gas station parking lot to await help. After police and emergency personnel arrived at the scene, Falcoun was transported to the hospital, where he was later pronounced dead as a result of the gunshot wounds, the victim of a homicide.

During the ensuing investigation, appellant provided conflicting stories to police regarding his whereabouts before and after the crime. He was interviewed by Detectives David Jacoby and Mo Greenberg[3] on three occasions—March 23, 2009, March 31, 2009, and April 2, 2009—and each interview was recorded for audio and video, although appellant was neither advised there was a camera in the room nor asked for

---

**2.** Eric Moss pled guilty to second degree murder for his part in the crime, and, in exchange for his testimony against appellant, he was sentenced to 50 years in prison, all but 15 suspended, instead of to life in prison. Edward Harris was arrested for his part in the murder of Falcoun, but at the time of appellant's trial, Harris had not yet been tried, and he did not testify at the trial of this matter.

**3.** Although Detective Greenberg was present during appellant's interviews, only Detective Jacoby testified at the trial, and the DVD recordings of the interviews were admitted through his testimony.

his permission to record the interviews.[4] Detective Jacoby denied being under an obligation to advise an interviewee that his statement may be recorded or to obtain his consent thereto.

At the time of the first interview on March 23, 2009, appellant had not yet been developed as a suspect; he was interviewed as a witness present at the scene of the shooting of Falcoun. During that interview, appellant described the details of the crime and provided the name of someone named "Dazz," whom he said might have been responsible for the shooting. He was unable to think of a motive for the shooting, opining it was "a straight up beef." During the first interview, appellant was "calm, very talkative."

Detective Jacoby also interviewed Joanne Severn on March 23, 2009, after she had left a message with the homicide office stating that she had information regarding Falcoun's death. From the information obtained during that interview, Jacoby focused on appellant as a suspect.

Appellant was next interviewed on March 31, 2009. On that occasion, he was read his *Miranda* rights, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); appellant signed a waiver of those rights and indicated he understood what he had read in the waiver. During the second interview, appellant was "very talkative, a little more emotional," than he had been during the first interview.

Appellant told Jacoby that he maintained guns and ammunition at a storage facility and attempted to deflect suspicion from himself as a suspect by stating that if he had been involved in the shooting, he never would have gotten into the victim's car because he could have been injured.[5] Following the second interview, appellant was released and driven home.

---

**4.** Although the issue appellant raises in his appeal relates to his demeanor during the videotaped interviews, the interviews themselves were not transcribed on the record, and the DVD recordings are not part of the record. For the purposes of this appeal, because the parties do not dispute the factual scenario, we accept the parties' characterization of the nature of the interviews.

**5.** As a result of information obtained from the March 31, 2009 interview, police executed two search warrants, one at appellant's home and

At the time of the third interview on April 2, 2009, appellant had been placed under arrest for the murder of James Falcoun. Appellant was again advised of his *Miranda* rights, and he again signed the *Miranda* rights waiver form. Appellant did not ask for an attorney, he was not threatened or promised anything as an inducement to talk to police, and he was given food and water and breaks as requested.

During the third interview, Detective Jacoby confronted appellant with the facts of the case, including the many discrepancies in appellant's stories and his omission of facts relating to the conversation with Joanne Severn in which he learned that she had had a sexual affair with Falcoun. Appellant's demeanor differed from that exhibited during the first two interviews, as he was "[s]omewhat more vocal, tried talking over [Jacoby], argumentative."

Over objection, the DVD recordings of appellant's three interviews with police were admitted into evidence and played for the jury.

Appellant chose to testify. He denied having any part in the shooting of James Falcoun.

Additional facts will be included as relevant.

## DISCUSSION

Appellant alleges that the trial court erred in allowing the jury to view, and admitting into evidence, the DVD recordings of the three interviews he gave to police, on the ground that he was unaware that the interviews were being taped, and he had not given his consent to being recorded. While not disputing the admissibility of the statements themselves, nor suggesting that his statements had been given in any violation of *Miranda,* he contends that his argumentative and defensive manner with Detective Jacoby, particularly during the April 2,

---

the other at his rented storage facility. Relevant evidence was recovered only from the storage facility.

2009 interview, was prejudicial and incriminatory and likely to have influenced the jury in violation of his *Miranda* right against compelled self-incrimination. The "emotional tenor of the interview," he says, added evidentiary value that would not have been present had the statement simply been transcribed and read to the jury.

The State counters that Detective Jacoby's recitation of appellant's *Miranda* rights and appellant's voluntary waiver of those rights was all that was required to allow the admission of the statements in any format. The *Miranda* warning that advised appellant that anything he said could be used against him in a court of law was sufficient to put him on notice that the words he used during the interviews might be admitted at trial. An additional advisement that the interviews were being recorded, the State continues, was not required, and appellant cites no authority to the contrary.

Prior to trial, defense counsel moved in *limine* to exclude the recordings of the statements appellant gave to Detective Jacoby, particularly during the third interview [6]:

Also with reference to a video, there again, we are not challenging proper advice of my client's Miranda warnings, we are not challenging the statement of my client to the police. There were a number of interviews with my client all of which were videotaped at headquarters of the police on Joppa Road in Towson. In the third interview in questioning [sic], my client [7] made various accusations, began raising his voice, standing, pointing at my client. My client, in response, did the same. Both parties used foul language that was not appropriate and the fact that most, the fact that most of the third interview is the detective accusing my client of committing this murder and my client denying it,

---

6. Defense counsel advised the trial court that he had no objection to the playing of the DVD recordings of the first two interviews, but he nevertheless objected to the introduction of each of them prior to their being played for the jury.

7. It would appear from the context of the argument that defense counsel intended to refer to Detective Jacoby, rather than his client.

which is the same he did [sic] in the first two videos. There is no new evidence in the third video other than the detective by his actions caused my client to become very agitated and although I am not challenging what my client actually said, my client was not informed that he was being videotaped and that that videotape would be used in the trial against him and shown to a Jury. Therefore, he did not consent to that, was not aware of it, and obviously, if he knew that his actions being videotaped were going to be shown to the Jury, would probably not have acted in the same way.

For all those reasons, I ask those tapes not be shown to the jury.

Counsel later added that the reason he was objecting to the recordings was because "the police purposely made my client lose his temper."

The trial court reserved ruling on the motion until it could view the edited portions of the recordings *in camera*. Due to technical difficulties with the playing of the recordings, the issue was not resolved until after the trial had commenced.

Prior to Detective Jacoby's testimony on the fourth day of trial, defense counsel again raised the issue of the playing of the recordings before the jury:

[Defense counsel]: Yes, Your Honor. The State intends to introduce through the testimony of Detective Jacoby portions of my client's statement to him over three different dates. He was interviewed three separate times. There's a total of, I think it's just under 20 hours of tapes, interviews, of which the State has narrowed it down to around two.

My objection, first, I would make it clear for the record, we are not challenging Miranda, we are not challenging voluntariness of my client's statements. What I'm challenging is my client, when he was advised of his rights, was not advised that the interviews were being taped and recorded and that those recordings would be shown to the jury.

My particular emphasis would be on the third interview in which the Detective raised his voice in laying out the

detective's opinion as to what happened. My client in response raised his voice. At one point they were standing almost nose to nose, yelling, well their voices raised quite loudly at each other, my client denying everything and the Detective giving his version.

I think the actions of my client, particularly in the third tape recording are highly prejudicial. I don't believe he would use the foul language that he used, which was quite extensive [had he] known that that was going to be shown to the Jury during his trial. And that certainly is unduly prejudicial to him and would deny him a fair and impartial trial.

For these reasons, I would ask that those three disks not be shown to the jury. I have no objection to the statements made by my client on those disks being read or related to the Jury, but strongly object to the introduction of the video.

After noting it had had some difficulty viewing the recording of the March 23, 2009 interview and stating it reserved its right to change its ruling if anything on that tape were relevant to the ruling, the court ruled as follows:

THE COURT: ... Miranda is indeed not challenged. Voluntariness of these statements is not challenged. But the one thing I noted is that with regard to the April 2nd, 2009, interview of Mr. Donaldson, the detective went over the Miranda form including a disclosure to him in writing and orally that anything he said, if he chose to speak during the course of that interview, could be used against him in a court of law. I think that suffices to place any reasonable interviewee on notice that the words during the course of any statements they give can come up again in court and I know of no legal requirement that necessitates disclosure that an interview is being audio taped or video taped. If that is going to be the law, is not now the law as I understand it, and I independently, after reviewing at least the March 31st and April 2nd interviews, don't determine there is anything unfair or otherwise objectionable that went on during the course of these recorded interviews that

would cause me to determine that the April 2nd, 2009, the interview should not be played for the jury.

Thereafter, Detective Jacoby testified as to how he became involved in the case and regarding the interviews he conducted with appellant. Prior to the State's moving its exhibit 30, the DVD recording of the March 23, 2009 interview, into evidence, defense counsel lodged a general objection, which the court overruled. The recording was played for the jury. Defense counsel again offered a general objection to the admission of State's exhibit 32, the DVD recording of the March 31, 2009 interview, which was again overruled. The second recorded interview was played for the jury.

When the State moved to admit exhibit 35, the DVD recording of the April 2, 2009 interview, into evidence, defense counsel offered a further objection, that is, that on the tape, Detective Jacoby gave his opinion as to what he believed were the facts of the case, which would not be admissible through his testimony. The State countered that the detective's statements were not being offered for the truth of the matters asserted therein, but only for the effect his words had upon appellant.[8] The court again overruled the defense objection. The DVD recording was played for the jury. The State rested its case after Jacoby's testimony.

The issue appellant raises on appeal is narrow. He does not challenge the voluntariness of the giving of his statements, nor does he assert that the waiver of his *Miranda* rights was not given freely, voluntarily, and intelligently. In fact, he concedes that he had no objection to the reading or other recitation of the words of his statements to the jury. His only argument is that he was unaware that his interviews were being recorded and that the admission of the recordings themselves added evidentiary value to his words that was

---

8. During the court's instructions to the jury, it advised that the detectives made statements during appellant's interviews that "were assertive in nature." The jury was instructed that "any theories or opinions advanced by the police in these interviews are not evidence in the case."

prejudicial to him, as the jury could make negative inferences about him from his assertive tone with Detective Jacoby and his use of foul language and raised voice, inferences that would not have been made had the jury simply been given a transcript of the interviews.

Appellant, however, offers no authority in support of his contention. In fact, the cases cited in his brief are supportive of the position taken by the State, that consent to the recording of the interviews was not required, and the recordings were properly admitted into evidence. Appellant nonetheless maintains that we should conclude that the trial court erred in admitting the recordings into evidence and that the presentation of the recorded statements in the absence of his consent to the recording was violative of his due process rights. We are unmoved by his pleas.

It is well established that *Miranda* stands for the requirement that, before police may interrogate a person in custody, the police must advise the person that any statement he or she makes "can be used against him in a court of law," so as to protect him from compelled self-incrimination. 384 U.S. at 478–79, 86 S.Ct. 1602. The person in custody may waive his *Miranda* rights if the waiver is voluntarily, knowingly, and intelligently made, and the determination of whether the waiver of an accused has been made knowingly and voluntarily is by a review of the totality of the circumstances. *Lee v. State,* 186 Md.App. 631, 649, 975 A.2d 240 (2009), *rev'd on other grounds,* 418 Md. 136, 12 A.3d 1238 (2011).

Here, there is no question that appellant was properly advised of his *Miranda* rights and that his waiver of those rights was valid; appellant concedes as much. He argues, however, that the underlying purpose of *Miranda*—to protect against compelled self-incrimination—would include "the nonverbal aspects of the tenor of the defendant's voice and the attitude and expression conveyed by his posture and physical movements" portrayed on the recording of the interviews, of which he was unaware at the time of the interviews.

██ Contrary to appellant's contention, the police were not required to ask for or receive permission from appellant before recording the interviews in the police interrogation room, and their failure to do so does not imply a due process violation. Md.Code, (2006 Repl. Vol., 2010 Supp.), § 10–402(c)(2)(ii) of the Courts & Judicial Proceedings Article, makes it lawful for a law enforcement officer acting in a criminal investigation to intercept an oral communication to provide evidence of the commission of a murder. Furthermore, we have noted that " '[t]here is no requirement that a defendant who has properly been given *Miranda* warnings must also be told he . . . may be tape-recorded or video-recorded or both.' " [9] *Lee,* 186 Md.App. at 654, 975 A.2d 240 (quoting *State v. Vandever,* 314 N.J.Super. 124, 714 A.2d 326, 328 (N.J.Super.Ct.App.Div.1998)). *See also, Lester v. Wilson,* 363 F.2d 824, 826 (9th Cir.1966) (Police secrecy in obtaining tape recording of incriminating statements, unassociated with other circumstances that would render statements inadmissible, do not present constitutional violation); *Blake v. State,* 972 So.2d 839, 843 (Fla.2007) (Detectives may record defendant's statement without consent); *Bedoya v. State,* 779 So.2d 574, 578 (Fla.Dist.Ct.App.2001) (Unconsented to taping of interview not violative of due process rights because a defendant could not have reasonable expectation of privacy in police interview room); *Davis v. State,* 271 Ga. 527, 520 S.E.2d 218, 219 (1999) (Failure to inform defendant that his statement was being videotaped did not render the statement involuntary); *State v. Wilson,* 755 S.W.2d 707, 709 (Mo.Ct.App.1988) ("Se-

---

**9.** This would not hold true in states that have a statutory right to privacy. Washington's Privacy Act, for example, specifically authorizes police officers to record the statements of persons in custody only if they conform strictly to the requirements of the Act, which include: 1) advising the arrested person he is being recorded; 2) recording the start/stop times of the interview; 3) advising the arrested person of his constitutional rights on the tape, and; 4) using the recordings only for valid police or court activities. *See State v. Courtney,* 137 Wash.App. 376, 383, 153 P.3d 238 (Wash.App.2007). In those instances, the issue is decided not on constitutional grounds, but on statutory ones.

cret recordation of in-custody questioning of an accused, standing alone, is not unconstitutional.").

■ Detective Jacoby never falsely promised, or even intimated to, appellant that the interviews were *not* being recorded, and appellant never inquired if they were. Had Jacoby lied if appellant had asked if the interviews were being recorded for later use at trial, or told appellant that what he said during the interviews was "off the record" or would go no further than the interrogation room, such an express misstatement may have conflicted with the *Miranda* advisement that anything appellant said could be used against him in court. *Lee v. State*, 418 Md. 136, 156, 12 A.3d 1238 (2011). *See also, U.S. v. Montoya*, 632 F.Supp. 1069, 1077 (D.Del.1986) (Defendant's recorded statement inadmissible at trial because police interrogator told him only the investigating officers would have access to the tape, in direct contravention of *Miranda* warnings that any statement he made could be used against him).

In this matter, however, appellant was not led to believe that his statements would not go beyond the interrogation room, the police interviewers did nothing to foster any particular sense of privacy in the interviews, and it was not reasonable for appellant to have assumed otherwise. Thus, the fact that the interviews were recorded without appellant's consent is unavailing to his argument.

As noted above, there is no question that appellant voluntarily and intelligently waived his *Miranda* rights before agreeing to speak with the detectives. Appellant thus knew that anything he said could be used against him at trial. Also as noted above, he had no reason to assume that his interviews were not being recorded. We therefore have no trouble extending the application of appellant's waiver of his *Miranda* rights from merely the words he used to the manner in which he used them. In other words, appellant was on notice that anything he said could be used against him in court, and he was not the arbiter as to the format in which the words he spoke could be so used. There is simply nothing to suggest

that the admission of the recorded version of his words—which he concedes would themselves have been admissible if transcribed—violated any due process rights.

With regard to the admission of the recordings themselves as evidence at trial, we note that the admission of evidence is left to the "considerable and sound discretion of the trial court." *Merzbacher v. State*, 346 Md. 391, 404, 697 A.2d 432 (1997). All relevant evidence is generally admissible unless its probative value is substantially outweighed by the danger of unfair prejudice. *Id.* at 405, 697 A.2d 432. A trial court's decision to admit relevant evidence over objection that the evidence is unfairly prejudicial will not be reversed absent an abuse of discretion. *Id.* We see no such abuse of discretion here.

The recordings of his statements to police, in which appellant denied involvement in the crime, were clearly relevant evidence. Although appellant argues he was prejudiced because the jury may have been swayed by the argumentative demeanor and use of expletives he exhibited during his interviews, along with Detective Jacoby's recitation of his belief of the facts of the crime, he points to no evidence of any such effect upon the jury.

Moreover, after the tapes were shown at trial, the court specifically instructed the jury that anything asserted by the police officers on the tape could not be considered substantive evidence. In the absence of evidence to the contrary, of which appellant presents none, jurors are generally presumed to follow the court's instructions. *Dillard v. State*, 415 Md. 445, 465, 3 A.3d 403 (2010). The trial court committed no abuse of its considerable discretion in admitting the recordings into evidence.

Finally, even were we to find that the admission of the recordings constituted error, we would find the error to be harmless beyond a reasonable doubt. In Maryland, an error is harmless if "a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a

reasonable doubt, that the error in no way influenced the verdict." *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976). The collective evidence in this matter renders it beyond a reasonable possibility that the jury would have returned a different verdict had the recordings been excluded.

The cumulative evidence established, beyond a reasonable doubt, that Joanne Severn, appellant's girlfriend, told him she had had a sexual affair with the victim, James Falcoun. Eric Moss testified that shortly thereafter, appellant told Moss that appellant wanted Falcoun dead for something he did with Severn and that appellant enlisted Moss and Edward Harris's aid in setting up the victim for murder. That information was borne out by the admission of appellant's cell phone records, which showed calls to Moss, Harris, and Falcoun on the evening of the murder. Detective Jacoby stated that Joanne Severn called the homicide detectives to state that she had information about Falcoun's death, which information caused Jacoby to focus on appellant as a suspect. Appellant neglected to mention any conversation with, or his break up from, Joanne Severn during his interviews with police. Finally, appellant was unquestionably in the victim's car on the night of the shooting, as shown by the testimony of the victim's girlfriend and the fact that he left his cell phone in the car when he fled the scene.

Even without the admission of the actual recordings of the interviews, appellant concedes a transcription of the statements he gave during the interviews with police could have been admitted at trial. Therefore, the jury would have received the same information with or without the recordings' admission. Had the recordings themselves not been admitted, we conclude that the jury would have returned the same verdict, based on the evidence as presented.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**