*Patrick Joseph Sweeney v. State of Maryland*, No. 1032, September Term, 2018. Opinion by Nazarian, J.

**CRIMINAL LAW – JURY INSTRUCTIONS – ACCOMPLICE LIABILITY**

An accomplice liability instruction is not generated when the State has not presented evidence that there was another participant, other than the defendant, in the crimes charged.

**CRIMINAL LAW – JURY INSTRUCTIONS – SUPPLEMENTAL INSTRUCTIONS**

The State may not introduce a new theory of liability via a supplemental jury instruction unless the defendant is given an adequate opportunity to respond.

**CRIMINAL LAW – JURY INSTRUCTIONS – SUPPLEMENTAL INSTRUCTIONS**

Courts should not provide supplemental instructions in response to jury questions that fall outside the scope of the case as it was presented to the jury.

Circuit Court for Montgomery County
Case No. 130347

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1032

September Term, 2018

_____

PATRICK JOSEPH SWEENEY

v.

STATE OF MARYLAND

_____

Nazarian,
Arthur,
Shaw Geter,

JJ.

_____

Opinion by Nazarian, J.

_____

Filed: August 1, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Patrick Joseph Sweeney was convicted in the Circuit Court for Montgomery County of second-degree theft and burglary. Mr. Sweeney was found guilty of breaking into a church pastor's garden shed and taking, among other smaller items, a John Deere riding lawn mower and twenty-five pairs of sneakers that had been donated to the church. The State presented its case against Mr. Sweeney on a first-degree principal theory of liability, but the jury convicted Mr. Sweeney only after the circuit court provided a supplemental instruction on accomplice liability after deliberations had begun, in response to a note from the jury. Mr. Sweeney contends that the supplemental instruction was not generated by the evidence at trial and unfairly prejudiced him because he had no opportunity to defend against an accomplice theory of liability. He also challenges the circuit court's decision to admit a collection of "burglary tools" into evidence, and the court's denial of his motion to suppress evidence obtained from a GPS tracker affixed to his truck. We agree with Mr. Sweeney's first two arguments, reverse, and remand for further proceedings.

## I.    BACKGROUND

Ronnie Morales is a pastor who resides in a church-owned property in Silver Spring. On the morning of June 25, 2016, Mr. Morales's landscaper informed him that the church's John Deere riding lawnmower was not in its usual spot in a shed at the back of the property. Mr. Morales checked the shed, which he kept closed but unlocked, and found "many items" missing including the riding mower, "small tools[,]" and boxes of sneakers that had been donated to the church. Mr. Morales estimated the total value of the missing items at about $5,000. Mr. Morales's nephew contacted the Montgomery County Police Department ("MCPD") to report the burglary.

Weeks before the church shed burglary, on May 27, 2016, the Howard County Police Department ("HCPD") had responded to a different burglary. That victim reported that a neighbor had approached him to let him know that he had seen a suspicious person at 5:15 that morning loading a lawnmower into the bed of a red pickup truck with Washington D.C. plates. The neighbor described the suspicious person as "a black male between 30 [and] 40 years old" and noted a partial license plate number containing the numbers 5035. The victim called the police after noticing several items, including an "ATV, power washer, and a chainsaw," missing from his shed. Detective Kenneth Drummond of HCPD investigated and discovered that a 2003 red Dodge pickup truck with Washington D.C. registration ENV5035 was registered to a Patrick J. Sweeney. His investigation further revealed that Mr. Sweeney had recently used his driver's license in a pawn shop transaction and that he had been charged with burglary several times before, most recently in 2009.

Based on the information he learned in his investigation, Detective Drummond secured a warrant to attach a GPS tracking device to Mr. Sweeney's truck for thirty days. HCPD attached the device to Mr. Sweeney's truck while it was parked at a Days Inn in Silver Spring, where Mr. Sweeney was living at the time. After thirty days, HCPD removed the tracker and Detective Drummond reviewed the data. He then shared the tracker data with Detective Joseph Vitaletti of MCPD. Detective Vitaletti forwarded the data to Detective Scott Sube of MCPD, an expert in electronic surveillance, who reviewed it. The data revealed that on June 25th, Mr. Sweeney's truck left the Days Inn around 1:17 a.m. The truck drove to the vicinity of Norwood Road and remained stationary on a side street

from 2:12 a.m. to 4:43 a.m. It moved to the area of 321 Norwood Road (the Morales residence) and remained stationary again from 4:50 a.m. to 5:08 a.m. The truck then left the area, drove to Washington D.C., and returned to the Days Inn at 5:43 a.m.

On August 18, 2016, Detective Vitaletti executed a search warrant for Mr. Sweeney's truck and hotel room. In the truck, he found a collection of tools, including bolt-cutters, Allen wrenches, a hammer, a bicycle pump, a chisel, a small shovel, a pair of gardening gloves, and a set of binoculars. Detective Vitaletti also found a pair of distinctively colored sneakers that matched the description of sneakers stolen from Mr. Morales' shed. The Detective arrested Mr. Sweeney for the Morales burglary.

Mr. Sweeney was tried by a jury on November 13 and 14, 2017. Detectives Drummond, Sube, and Vitaletti each testified about their role in the investigation. Multiple detectives testified that although they had seen Mr. Sweeney driving his truck on other occasions, none had seen him on the day of the alleged burglary. Detective Vitaletti testified that he could not rule out the possibility that someone "either borrowed or stole [Mr. Sweeney's] truck and was in Silver Spring at Mr. Morales's using his truck[.]"

Mr. Morales testified at trial that he hadn't seen anything the night of the burglary, but that there were tire tracks on the road and in the grass leading up to his shed the following morning. He identified the sneakers recovered from Mr. Sweeney's hotel room as a pair that had been in his shed. The tools found in Mr. Sweeney's truck, which the State characterized as "burglary tools," were admitted into evidence over Mr. Sweeney's objection. The State did not provide any witnesses to the crime, DNA evidence, fingerprint evidence, or boot track evidence.

3

Mr. Sweeney offered two witnesses in his defense. Orca Stewart testified that he had known Mr. Sweeney for fifteen years and that Mr. Sweeney had occasionally performed odd jobs for him, such as hauling and landscaping. Mr. Stewart confirmed that Mr. Sweeney drove a red pickup truck and that he had seen other people driving it on multiple occasions. He could not account for Mr. Sweeney's whereabouts the day of the alleged burglary, though, and testified that he had not employed Mr. Sweeney during the summer of 2016.

Camille Tilley testified that she was a childhood friend of Mr. Sweeney's and had been a passenger in Mr. Sweeney's truck. She stated that Mr. Sweeney kept a variety of tools in the vehicle to use for "the kind of work that he did, or he needed gloves for . . . hauling trash. [] [W]orker's tools." Ms. Tilley testified that she knew Mr. Sweeney to rent out his truck for income because he was unable to work full time due to a back injury. Ms. Tilley stated that she had spent the night of the alleged burglary with Mr. Sweeney at the Days Inn, where they were "organizing the work that has to be done for getting ready for the [] Fourth of July."

Before closing arguments, the trial judge instructed the jury. Both parties stated, when asked, that they were satisfied with the instructions. After deliberations had begun, the trial judge received a note from the jury, and discussed it with the parties on the record:

> THE COURT: [The note] says [']if two people engage in the crime of burglary but only [one] enters the shed are both guilty of the crime[?'] And, I think the answer is yes, but I guess the definition of, of engage would be if he aided or abetted. There's an instruction on that deals with aiding and abetting which I guess it's called accomplice liability . . . which I might propose[] to read. What's the State's position[?]

4

[THE STATE]: Well, initially my response [] was that your [sic] only considering charges against Mr. [Sweeney], but then as I've been sitting here I looked at the note again, I realized that the answer to that question is yes. So, I would, if the Court's inclined to say the answer is yes and then give them that instruction I would be satisfied with that, Your Honor.

THE COURT: . . . What's the defense position on that?

[MR. SWEENEY'S COUNSEL]: Your Honor, the defense position is that this wasn't charged and hasn't been argued as an aiding and abetting theory. This would be the first time we had heard of that and I don't think that's the case that, that the State's tried to argue here. Certainly, that wasn't something we ever had an opportunity to try to respond to or rebut and our request would be that the Court reiterate [] the instruction that was given[.]

***

It's not what [the State] argued in [its] closing and not something we've ever had a chance to address . . . either as a matter of bringing up certainly any legal objection we might have to it and certainly not had an opportunity to address the jury on why we don't think the specific elements of aiding and abetting would be satisfied here.

The trial judge disagreed with Mr. Sweeney and gave the jury a supplemental instruction on aiding and abetting. The jury subsequently convicted Mr. Sweeney of second-degree burglary and theft. We supply additional facts below as needed.

## II.    DISCUSSION

Mr. Sweeney raises three issues on appeal.[1] He argues *first* that the trial court

---

[1] Mr. Sweeney framed his Questions Presented as follows:

1. Did the trial court abuse its discretion by giving a jury instruction on accomplice liability after closing arguments and over the defendant's objection when the State presented no evidence on that theory, declined to argue the theory at trial, and never requested the instruction?

2. Did the trial court abuse its discretion by allowing the State

committed reversible error by instructing the jury, after deliberations had begun, on an accomplice liability theory not generated by the State's evidence at trial. He argues *second* that the trial court abused its discretion by admitting irrelevant and unduly prejudicial evidence of "burglary tools" that Mr. Sweeney had in his truck. He argues *third* that the court erroneously found probable cause to grant the GPS tracker warrant for Mr. Sweeney's truck because the underlying affidavit contained material misrepresentations of fact, and that the circuit court erred by denying his motion to suppress the resulting evidence. We agree with Mr. Sweeney's first two arguments, reverse his convictions and, for guidance on remand, find that the circuit court properly denied his motion to suppress the GPS data.

---

to introduce evidence of "burglary tools" where the State conceded the tools were not used to commit burglary, the State presented no evidence that a perpetrator possessed the tools while at the site of the alleged burglary, and the tools were not found in Mr. Sweeney's possession until almost two months after the alleged burglary occurred?

3. Did the district court have a substantial basis to find probable cause to believe Mr. Sweeney's vehicle was involved in a burglary where the underlying Affidavit contained readily identifiable material misrepresentations and a material omission bearing on the ultimate question of whether a "fair probability" existed?

The State phrased the Questions Presented as follows:

1. Did the trial court act within its discretion when it instructed the jury about accomplice liability?

2. Did the trial court act within its discretion when it admitted evidence of burglary tools?

3. Did the circuit court properly deny Sweeney's motion to suppress evidence?

6

**A.    The Circuit Court Erred By Giving A Supplemental Jury Instruction On Accomplice Liability.**

Mr. Sweeney was convicted of second-degree burglary and theft after the trial judge gave the jury a supplemental instruction on accomplice liability over Mr. Sweeney's objection. He contends now that the supplemental instruction was not generated by the evidence and that the court's decision to give the instruction in mid-deliberation left him no opportunity to respond to a new alternative theory of liability. We agree on both points.

**1. The accomplice liability jury instruction was not generated by the evidence presented at trial.**

Under Maryland Rule 4-325, "[t]he court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding." Rule 4-325(c). Normally, jury instructions are given "at the conclusion of all the evidence and before closing arguments," but the court "may supplement them at a later time when appropriate." Rule 4-325(a). "The decision of whether to give supplemental instructions is within the sound discretion of the trial judge and will not be disturbed on appeal absent a clear abuse of discretion." *Sidbury v. State¸* 414 Md. 180, 186 (2010). And "[w]hile we defer to the trial judge's ruling, an improper exercise of discretion may cause prejudice to a party and result in reversible error." *Wood v. State*, 436 Md. 276, 293 (2013) (*quoting Collins v. National R.R. Passenger Corp.*, 417 Md. 217, 228–29 (2010)).

Supplemental instructions are often triggered by a jury question. When a jury question involves an issue central to the case, "a trial court must respond . . . in a way that clarifies the confusion evidenced by the query." *State v. Baby*, 404 Md. 220, 263 (2008). In that instance, a "helpful response is mandatory." *Id.* (*quoting Lovell v. State*, 347 Md.

7

623, 658–59 (1997)). But not all jury questions require an answer—it may also be appropriate for the trial judge simply to tell the jury to rely on the instructions given prior to closing arguments. *Brogden v. State*, 384 Md. 631, 651 (2005).

A requested jury instruction, general or supplemental, must be given when the following three requirements are satisfied: *first,* it must be a correct statement of the law; *second*, the instruction must apply to the facts of the case; and *third*, it must not be "fairly covered elsewhere" in the jury instructions as a whole. *Dickey v. State*, 404 Md. 187, 197–98 (2008). We find that the supplemental instruction given at Mr. Sweeney's trial was not generated by the evidence and fails the second requirement.

There is no aiding and abetting statute in Maryland, but the common law recognizes that a person "who did not actually commit the crime in question may nevertheless be guilty to the same degree as the person who did." *Kohler v. State*, 203 Md. App. 110, 119 (2012). A defendant convicted under an aiding and abetting theory is a "principal in the second degree." *Handy & Bucci v. State*, 23 Md. App. 239, 252 (1974). "The principal in the second degree differs from the principal in the first degree in that he does not do the deed himself . . . but in some way participates in the commission of the [crime] by aiding, commanding, counseling, or encouraging" the principal in the first degree, who is the primary actor. *Pope v. State*, 284 Md. 309, 331 (1979). The trial judge's instruction was consistent with the law of accomplice liability:

> The defendant may be guilty of a second-degree burglary or theft or both as an accomplice even though the defendant did not personally commit the acts that constitute that crime. In order to convict a defendant of second-degree burglary or theft or both as an accomplice, the State must prove that the second-

8

degree burglary or theft or both occurred and that the defendant
. . . . with the intent to make the crime happen knowingly aided,
counseled, commanded or encouraged the commission of the
crime or communicated to a participant in the crime that he was
ready, willing, and able to lend support if needed.

The problem isn't the text of the instruction—it stated the law of accomplice liability properly. The problem is that the evidence at trial didn't generate an aiding and abetting instruction. A jury instruction is generated when a party has produced "some evidence" to support the theory it propounds. *Wood*, 436 Md. at 293. "Some evidence is not strictured by the test of a specific standard. It calls for no more than what it says—'some,' as that word is understood in common, everyday usage. It need not rise to the level of 'beyond a reasonable doubt' or 'clear and convincing' or 'preponderance.'" *Id.* (*quoting Dykes v. State*, 319 Md. 206, 216–17 (1990)) (cleaned up). The standard is not high, but there has to be *some* evidence that supports the theory.

"[I]t is axiomatic that in order for a person to be a principal in the second degree [(an accomplice)], there must be a crime committed *and a principal in the first degree*, and it must be shown that the person aided or abetted was connected with the offense." *Handy*, 23 Md. App. at 252 (emphasis added). "The principal in the second degree . . . *does not do the deed himself . . . but in some way participates in the commission of the felony by aiding, commanding, counseling, or encouraging the actual perpetrator.*" *Smith v. State*, 415 Md. 174, 188 (2010) (*quoting Pope*, 284 Md. at 33) (emphasis added). The State doesn't have to secure a conviction against the first-degree principal, or even allege the crime was committed by a specific person, to pursue an accomplice theory. *Handy*, 23 Md. App. at 252. But to generate an accomplice liability instruction, the State must present evidence

9

that Mr. Sweeney "in some way participate[d] in the commission of the felony by aiding . . . [an] *actual perpetrator*." *Pope*, 284 Md. at 331 (emphasis added); *see also U.S. v. Horton*, 921 F.2d 540, 543 (4th Cir. 1990) ("inherent in the evolution of the concept of accessory is the idea that the accessory and the principal are ordinarily different persons.") (*quoting U.S. v. Walden*, 464 F.2d 1015, 1020 (4th Cir. 1972)). Indeed, the Fourth Circuit in *Horton* characterized as "inapposite" cases in which there was "insufficient evidence that anyone other than the defendant was involved in the crime alleged." 921 F.2d at 544 (cited with approval in *Cruz v. State*, 407 Md. 202, 213 (2009)).

In this case, the State presented strong circumstantial evidence against Mr. Sweeney, but only against Mr. Sweeney. His truck was tracked by GPS[2] to the scene of the alleged burglary, where tire tracks on the grass led to the shed. A pair of sneakers that the victim recognized as stolen from his shed were found in Mr. Sweeney's hotel room weeks later. But the State presented no evidence that another person, *any* other person, was involved in the crime. And in its own brief, the State concedes that it provided "no witnesses, DNA evidence, fingerprint evidence, or boot tracks evidence" that might suggest a second participant.

The sole piece of evidence to which the State points to support the accomplice instruction is the size of the stolen tractor—the State theorizes that one person could not have lifted a 450-pound tractor into the bed of a pickup truck by himself, so someone else must have been involved. But that possible inference cannot generate an accomplice

---

[2] Based on a sound warrant. *See* Section C, below.

instruction by itself. Nor can the State count its closing argument musings that "he could have been with someone else" and "there could have been people helping him," or defense counsel's comment, also in closing, that it's "frankly absurd" to think that "Mr. [Sweeney] loaded a 450-pound tractor into a truck"—closing arguments are arguments, not evidence. The State even acknowledged in its closing that its suggestions that Mr. Sweeney may have had assistance committing these crimes were mere speculation. As low as the bar for generating jury instructions is, the trial record in this case didn't support the accomplice liability instruction the court gave during deliberations.

### 2. Mr. Sweeney was prejudiced by the supplemental instruction because the State did not proceed on an accomplice theory of liability and he had no opportunity to respond.

Even if the evidence at Mr. Sweeney's trial had supported the theory that another individual was involved in his alleged crimes, the State did not argue that theory at trial, and the timing of the instruction left Mr. Sweeney no opportunity to defend against the new theory.

Trial judges are not obligated to provide a substantive answer to every question a jury raises during deliberations. *Brogden*, 384 Md. at 644. The court should not provide supplemental instructions "when those questions deal with aspects of the law that have absolutely nothing to do with the case *as presented to that jury* . . . . [T]he jury should be limited in its deliberations to the issues and evidence as presented to it and should not be given answers to inquiries which reach outside of the case as presented at trial." *Id.* (emphasis in original). The supplemental jury question in this case did not relate to the theory of the case the State chose. And because Mr. Sweeney was convicted after the

11

alternative theory of liability was presented to the jury, and without an opportunity to respond, the supplemental accomplice instruction prejudiced him unfairly.

The context and timing of supplemental instructions creates a particular potential for prejudice. Supplemental instructions come almost always in response to questions posed by the jury. The mere fact that the jury seeks additional information on a specific point of law reveals the focus of their deliberations. *See State v. Bircher*, 446 Md. 458, 483 (2016) (Watts, J., dissenting). Because supplemental instructions are given in isolation, they draw more attention than individual instructions within a comprehensive set. *Id.* Furthermore, supplemental instructions are, as the title suggests, supplemental, and are delivered after the parties have made closing arguments. Unless the trial court provides a supplemental opportunity to respond, as in *Bircher*, 446 Md. at 458, a supplemental instruction that presents a new theory of liability goes unaddressed and, in the jury's mind, unchallenged.

The Court of Appeals addressed potentially prejudicial supplemental instructions in *Cruz v. State*, 407 Md. at 202 (which held a supplemental jury instruction on attempted battery impermissible when the State had previously stated it would not pursue that theory and the defendant had no opportunity to defend against it) and in *State v. Bircher*, 446 Md. 458 (2016) (which held that prejudice created by a supplemental transferred intent instruction was cured when the court gave the defendant an opportunity to supplement his closing argument in response). Although the Court reached different conclusions based on the facts of each case, both opinions stand for the principle that "a supplemental instruction should not be given if the accused was unfairly prevented from arguing his or her defense

12

to the jury or was substantially misled in formulating and presenting arguments." *Bircher*, 446 Md. at 472 (*citing Cruz*, 407 Md. at 202) (cleaned up)). "[A] defendant must have an adequate opportunity to argue his innocence under the [trial] court's instructions in order to be assured a fair trial." *Cruz*, 407 Md. at 214 (*quoting Horton*, 921 F.2d at 541). So at a minimum, when a supplemental instruction injects a new theory of criminal liability into the case after closing arguments, the trial court must at least give the defense an opportunity to respond in a supplemental argument after the instruction is given. *Compare Bircher*, 446 Md. at 458 *with Cruz*, 407 Md. at 202.

Both *Cruz* and *Bircher* rely heavily on decisions from other state and federal jurisdictions, several of which deal directly with the specific issue Mr. Sweeney presents— the propriety of a supplemental instruction on accomplice liability when the State had elected to pursue exclusively a first-degree principal theory throughout the trial. We find the reasoning in several of those cases persuasive here.

In *U.S. v. Gaskins*, the United States Court of Appeals for the Ninth Circuit held that "instructing the jury that it could convict [the defendant] as an aider or abettor without allowing additional argument to address this theory" was reversible error. 849 F.2d 454, 460 (9th Cir. 1988). The court reasoned that "arguments based on convicting a defendant as a principal or convicting a defendant as an aider and abettor are based on two conceptually different theories," and thus that the theories required the government to prove different elements for each. *Id.* at 459. Because the prosecution did not pursue accomplice liability in its case-in-chief, the court held that the defendant was not on notice to defend against that theory and could not fairly be convicted on that theory. *Id*. The court

also found that the defendant had been deprived of the opportunity to argue the principle that "'mere presence' at the scene of a crime and knowledge that a crime is being committed is not sufficient to establish that an accused aided and abetted, unless the prosecution proves beyond a reasonable doubt that the defendant was a participant, and not merely a knowing spectator." *Id.* at 460.

The Supreme Court of Illinois reached the same conclusion in *People v. Millsap*. 189 Ill.2d 155 (2000). Relying on *Gaskins*, the court held that "the [trial] court should not submit new charges or new theories to the jury after the jury commences its deliberations" because that denied the defendant "[the] right to address the theory of guilt upon which he may have been convicted." *Id.* at 164. The court concluded that the trial court should instead have told the jurors to continue deliberating:

> When faced with the jury's question, the [trial] court should have told the jurors that they had the instructions applicable to the case and that they should keep deliberating. The State elected to charge defendant as a principal and to argue that defendant was guilty as a principal. If, as the State insists, an accountability instruction was appropriate in this case, the State should have asked for such an instruction at the proper time. It was too late for the State to change its theory of the case after the case had been sent to the jury.

*Id.* at 165.

Finally, the Washington Court of Appeals put it simply in its decision in *State v. Ransom*:

> Accomplice liability is a distinct theory of criminal culpability. If the State elects to pursue that theory, it has an obligation to offer timely and appropriate instructions. A defendant has the right to rely on the fact that the State has elected not to pursue that theory. It does not matter in this case that the court chose

14

to give the [accomplice] instruction in response to a jury question. The effect was to add a theory that the State had not elected and that defense counsel had no chance to argue. The trial court erred in giving the accomplice liability instruction after deliberations began.

56 Wash.App. 712, 714 (1990) (internal citations omitted).

Mr. Sweeney faced the same challenges as the defendants in *Gaskins*, *Millsap*, and *Ransom*. The State presented no evidence that another actor was involved and acknowledged that it had not intended to pursue an accomplice theory. When asked for its position on whether to give an accomplice instruction, the State responded that "initially [] my response [] was that you['re] only considering charges against Mr. [Sweeney]." The State's argument now[3] that Mr. Sweeney was on notice all along of the State's intention to argue accomplice liability doesn't square with the trial record. As we read the record, it was not until after jury deliberations had begun that the State, in response to a jury question, adopted an accomplice theory of liability. And unlike the defendants in *Bircher* and *Horton*, Mr. Sweeney had no opportunity to supplement his argument in response to the accomplice instruction.

"While it may be commonplace for a jury to pose questions during deliberations to a trial court for clarification and often these questions are reasonable, this does not mean that a trial court judge is obliged to provide answers via supplemental instructions to every question that a jury presents to the court[.]" *Brogden*, 384 Md. at 644. *See also* Md. Rule 2-521. Indeed, "a trial court is not authorized to instruct the jury on legal principles that are

---

[3] The State's brief asserts that "[its] theory of the case was that [Mr.] Sweeney was involved in the burglary of the Morales shed, but not necessarily that he acted alone."

not applicable to the particular case." *Id.* at 646 (*quoting People v. DeGina*, 72 N.Y.2d 768 (1988) (cleaned up)). The jury may stray unknowingly outside the confines of the law as presented in the initial jury instructions, and when it does, the court's obligation is to steer them back to the law, not to expand the governing law to encompass the jury's question. Rather than giving the accomplice instruction here, the court should have instructed the jury "to confine its deliberations to the issues and evidence properly before it and the instructions already given and not to speculate on matters as to which no evidence had been introduced." *Id.* at 651. We conclude that the trial court erred both in giving the ungenerated supplemental instruction, and in failing to give Mr. Sweeney the opportunity to respond to it. We reverse his convictions and remand for further proceedings consistent with this opinion.

**B.     The Circuit Court Erred By Admitting Mr. Sweeney's "Burglary Tools" Into Evidence.**

Mr. Sweeney argues next that the circuit court erred by admitting into evidence a series of close-up photographs of items it identified as "burglary tools": a pair of bolt cutters, an Allen wrench, binoculars, a bicycle pump, "a chisel type tool," "a small [] sledgehammer type hammer," and a "small [] hand shovel." A photo that showed all of those items together, as well as a pair of gardening gloves and a sprinkler, was also admitted. Mr. Sweeney contends that the tools were irrelevant, unduly prejudicial, and constituted inadmissible propensity evidence because the State did not establish any

16

connection between the tools and the Morales burglary.[4] We agree.

It is undisputed that none of the "burglary tools" admitted into evidence were actually used to commit the crimes at the Morales residence. Mr. Morales testified that his shed was left routinely with its doors closed but unlocked. And the State concedes that there was no indication of forced entry at the Morales shed. The circuit court did not admit the "burglary tools" into evidence on the theory that they were used in *this* crime, but rather on the theory that burglars are in the habit of carrying tools around with them in case they encounter a locked door:

> I guess if you're a fully prepared burglar and you bring whatever you can to get in a lock . . . I think it's a reasonable belief for a jury to conclude that a burglar has his tools. And they're not limited to any particular one kind of lock. . . . He may have trouble picking a lock and so he'd have to use brute force. Maybe an untrained burglar might have to resort to that.

This reasoning is problematic for two reasons—*first*, because "burglary tools" are not relevant when the crime indisputably did not involve any tools and, *second*, because photos of "burglary tools" unconnected to the specific crime is evidence of criminal propensity forbidden by the Maryland Rules. *See* Md. Rule 5-404(a).

All evidence admitted at trial must be relevant. "Evidence is relevant if it tends to 'make the existence of any fact that is of consequence to the determination of the action

---

[4] Mr. Sweeney also brings our attention to the fact that the "burglary tools" were recovered from his truck fifty-days after the alleged burglary. He argues that the discovery was too remote in time from the alleged crime. Remoteness in time, however, ordinarily "affects the weight, rather than the admissibility, of evidence," and "[t]he question of excluding evidence because of remoteness rests largely in the sound discretion of the trial judge." *Purviance v. State*, 185 Md. 189, 198 (1945).

more probable or less probable than it would be without the evidence.'" *Walter v. State*, 239 Md. App. 168, 198 (2018) (*quoting* Md. Rule 5-401). Relevant evidence generally is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice[.]" Md. Rule 5-403. The admissibility of evidence is "left to the considerable and sound discretion of the trial court." *Donaldson v. State*, 200 Md. App 581, 595 (2011) (internal quotation omitted). We review the trial court's determination of legal relevance *de novo*. *Brethren Mut. Ins. Co. v. Suchoza*, 212 Md. App. 43, 52 (2013). We do not disturb "[a] trial court's decision to admit relevant evidence over objection that the evidence is unfairly prejudicial" absent an abuse of discretion. *Donaldson*, 200 Md. App at 595.

Relevance has two components: materiality and probative value. *State v. Joynes*, 314 Md. 113, 119 (1988). "Evidence is material if it bears on a fact of consequence to an issue in the case," *Smith v. State*, 218 Md. App. 689, 704 (2014), and "probative value[] is the tendency of evidence to establish the proposition that it is offered to prove." *Joynes*, 314 Md. at 119 (*citing McCormick on Evidence* § 185, at 541 (E. Cleary 3d ed. 1984)). The relevance of Mr. Sweeney's "burglary tools" is questionable at best. We struggle to see how bolt cutters, a sledge hammer, or binoculars are relevant to a burglary that involved opening an unlocked door at night. And any limited relevance the "burglary tools" may have is outweighed by the risk of prejudice to Mr. Sweeney, particularly because of how the items were characterized in the State's case.

In general, "evidence tending to link a defendant to uncharged, unrelated criminal conduct" is inadmissible. *Williams v. State*, 342 Md. 724, 738 (1996). This Court and the Court of Appeals have held that evidence relating to crimes other than those charged is

18

irrelevant and unduly prejudicial. In *Williams*, the Court of Appeals held that the trial court erred by admitting "burglars' tools," including a pry bar and mace, when there was "simply no evidence in the record establishing any connection between the [tools]" and the crimes charged. 342 Md. at 738. The Court found that the tools' probative value was "virtually nil" and outweighed substantially by the danger of unfair prejudice. *Id.* at 738. In *Smith*, this Court held that the trial court erred by admitting evidence that the defendant owned firearms and ammunition unrelated to the crimes charged. 218 Md. App. at 706. "Without a more direct or tangible connection to the events surrounding *this shooting*," we said, "the evidence of the other weapons and ammunition owned by [the defendant] failed the probativity/prejudice balancing test, and the trial court erred by admitting it." *Id.* (emphasis in original)).

If a tool can serve as the instrumentality of *a* crime but didn't serve as the instrumentality of *this* crime, it signals the defendant's involvement in, or preparation for, a different crime and suggests a general criminal character that the rules of evidence expressly forbid. *See* Md. Rule 5-404(a). It is a "fundamental proposition that an accused may be convicted only by evidence which shows that he is guilty of the offense charged, and not by evidence which indicates his guilt of entirely unrelated crimes[.]" *Ross v. State*, 276 Md. 664, 669 (1976). But that is precisely why the circuit court admitted the tools in this case—not to show that Mr. Sweeney committed *this* burglary, but to show that he is a well-prepared burglar with his tools at the ready. And "[e]vidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it be a crime of the same type, is irrelevant and

19

inadmissible." *Id.* at 669.

The tools in Mr. Sweeney's truck present a closer question than *Williams* and *Smith*, both of which involved unrelated weapons admitted against defendants on trial for violent crimes. Mr. Sweeney's occasional work as a handyman and landscaper also offered an innocuous explanation for the so-called "burglary tools." Even so, admitting photos of these implements as evidence of burglar's tools "gave the jury a basis from which to conclude that [he] had a propensity to commit crimes, especially burglary." *Williams*, 342 Md. at 738. And that risk was compounded by "the State's Attorney's reference to the items as 'burglars' tools' during closing arguments." *Id*. Because nothing connected Mr. Sweeney's tools to the Morales burglary specifically, they are irrelevant and impermissibly suggest Mr. Sweeney's general criminal character and the circuit court erred by admitting them into evidence at trial.

## C. The Circuit Court Properly Denied Mr. Sweeney's Motion to Suppress The GPS Data.

*Finally*, Mr. Sweeney contends that the circuit court erred when it denied his "motion to suppress evidence obtained pursuant to the HCDP GPS Warrant because the district court judge lacked a substantial basis to find probable cause on account of certain omissions and inaccuracies set forth in the Affidavit." We disagree and find that the GPS warrant was supported by probable cause.

The Fourth Amendment to the U.S. Constitution protects individuals from unreasonable government search and seizure absent a warrant issued upon a finding of probable cause. U.S. Const. amend. IV. "As a predicate for the issuance of a search

warrant," probable cause "simply means 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Holmes v. State*, 368 Md. 506, 519 (2002) (*quoting Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "When we review the basis of the issuing judge's probable cause finding, we ordinarily apply the 'four corners rule' and 'confine our consideration of probable cause solely to the information provided in the warrant and its accompanying application documents.'" *Williams v. State*, 231 Md. App. 156, 175 (2016) (*quoting Gates*, 462 U.S. at 669)). In so doing, we employ a deferential standard of review. *Greenstreet v. State*, 392 Md. 652, 667 (2006).

The district court issued the warrant based on Detective Drummond's investigation of "a series of burglaries" that involved the overnight or early morning disappearance of tools and lawn equipment from Cherry Tree Drive in Howard County. Detective Drummond submitted an affidavit containing a statement of probable cause. The affidavit explained that one of the burglary victims "advised that his neighbor approached him about a suspicious subject he observed at 0515 . . . a black male between 30 [and] 40 years old was observed loading a lawnmower into a red Dodge pickup truck with partial Washington D.C. registration '5035.'" The neighbor also told the victim that the truck bed contained several items matching the description of items missing from the victim's shed. The affidavit explained that Detective Drummond had checked "law enforcement databases and located a subject named Patrick [Joseph] Sweeney" who had a Dodge truck with Washington D.C. registration number ENV5035 registered in his name. Mr. Sweeney's truck was noted on a traffic citation to be red, and his driver's license had been used recently in a pawn shop transaction. The affidavit noted that Mr. Sweeney, a 52-year-old

21

black male, "matches the description of the suspect given by the witness to responding officers."

Mr. Sweeney contends that the statement of probable cause was insufficient because it "contained material misstatements" and "omitted material facts." The alleged "material misstatement" is Detective Drummond's assertion that Mr. Sweeney matched the description provided by the victim—the victim stated that the "suspicious subject" his neighbor observed was "a black male between 30 [and] 40 years old," but Mr. Sweeney was 52 at the time. We agree with Mr. Sweeney that "[i]t cannot be the case that Mr. Sweeney being a 'black male' was a sufficiently matching description to establish probable cause," but his race was not the sole characteristic on which the district court based the warrant. The court considered an eyewitness account[5] of a black, adult man putting lawn equipment into the bed of a red truck with partial D.C. plates that included the numbers 5035, and Mr. Sweeney is a black adult man who owns a red truck with partial D.C. plates that read 5035. Detective Drummond's statement that Mr. Sweeney matched the victim's description encompassed all of those details. The fact that the neighbor's approximation of the suspect's age did not match Mr. Sweeney's age precisely does not undermine the probable cause finding or constitute a "material misstatement."

The "material fact" allegedly omitted was "information about how many other vehicles registered in the district were also partial matches" to the victim's description. For

---

[5] Mr. Sweeney also argues that the multiple levels of hearsay—neighbor to victim to police—make the description of Mr. Sweeney unreliable.

this proposition, Mr. Sweeney relies solely on the Idaho Court of Appeals's decision in *State v. Cada*. 129 Idaho 224, 226 (Ct. App. 1996). A partial license plate does figure minimally into the facts of that case, but that opinion does not address the use of the partial plate to identify the defendant, and certainly doesn't suggest that a partial plate match is permissible in a warrant application only when law enforcement provides statistics to back it up. "[P]robable cause is a fluid concept," and establishing probable cause "does not deal with hard certainties, but with probabilities" grounded in the totality of the circumstances presented in the warrant application. *Gates*, 462 U.S. at 232 (*quoting U.S. v. Cortez*, 449 U.S. 411, 418 (1981)). Mr. Sweeney urges us to view a single element of many in isolation, but the district court was not so limited. Mr. Sweeney was not tracked based solely on a partial plate match. He was tracked based on a partial license plate match to a truck that matched the description of the vehicle used in a burglary described by an eyewitness and driven by a black male adult. The district court had a substantial basis for finding probable cause, and the circuit court did not err by denying Mr. Sweeney's motion to suppress.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. MONTGOMERY COUNTY TO PAY COSTS.**